**James M. SCHMIDT, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. WD 59124.

Missouri Court of Appeals, Western District.

June 29, 2001.

Michael C. McIntosh, Independence, for Respondent.

Jeremiah W. (Jay) Nixon, Attorney General, Barry A. Gilbert, Assistant Attorney General, Jefferson City, for Appellant.

Before EDWIN H. SMITH, P.J., and SMART and HOWARD, JJ.

HOWARD, Judge.

The Director of Revenue appeals from the trial court's directed verdict in favor of James Schmidt, setting aside the Director's revocation of Schmidt's driving privileges under § 577.041[1] for refusing to submit to a chemical test. In her sole point on appeal, the Director contends that the trial court erred in granting Schmidt's motion for directed verdict because the Director made a prima facie case for suspending Schmidt's driving privileges in that evidence was presented to show that Schmidt was arrested on reasonable grounds that he had driven a motor vehicle while intoxicated, that the arresting officer read Schmidt the Implied Consent Law verbatim, and that Schmidt called a lawyer and then unequivocally refused to submit to a chemical blood alcohol test.

Reversed and remanded.

### Facts

James Schmidt was notified that his driving privileges would be suspended for one year pursuant to § 577.041. Schmidt

1. All statutory references are to RSMo Cum. Supp. 1999.

filed his application for hearing in the trial court on April 19, 2000. The evidence adduced at the hearing was as follows.

Officer James Peeler of the Kansas City, Missouri Police Department testified that after he arrested Schmidt on suspicion of drunk driving, he read Schmidt the Implied Consent Law verbatim. Peeler testified that after he read Schmidt the Implied Consent Law, Schmidt asked for a lawyer at 10:36 p.m. Peeler testified that after Schmidt requested a lawyer, he gave Schmidt a phone book and let him use the phone, but he did not recall whether or not Schmidt talked to his lawyer on the phone. Peeler testified that he entered Schmidt into the Intoxilyzer 5000 as a refusal at 10:46 p.m., and he marked Schmidt as a refusal on the implied consent form at 10:50 p.m. Peeler testified as follows:

Q. Okay. You want to tell me a little bit about what happened in there?

A. Well, I know he asked for an attorney after—I don't remember whether or not he talked to his attorney on the phone. As soon as he got off the phone, that's when he refused to take the test. So I went ahead and set up the machine and did—did the machine as a refusal. And, I don't know, I must have gotten a time lapse or something there between my watch and the thing on there, but I marked 2250 on the Implied Consent.

Q. So based on this report, you didn't give him the proper 20 minutes necessary.

A. No, ma'am, I did not.

Q. Do you think you gave him the 20 minutes?

A. Probably not.

. . .

Q. Answer the question. Do you think you gave him the 20 minutes?

A. No, I don't.

* * * * *

At the close of the Director's case, Schmidt's counsel made a motion for directed verdict based on the argument that Schmidt was not given the requisite twenty minutes to contact an attorney. The trial court entered its judgment in favor of Schmidt, finding that Schmidt was arrested on probable cause to believe that he had committed an alcohol-related traffic offense on April 12, 2000, but that Schmidt did not refuse to submit to a chemical test of his breath. The court set aside the revocation of Schmidt's driving privileges. This appeal follows.

## Argument

The Director's sole point on appeal is that the trial court erred in granting Schmidt's motion for directed verdict because the Director made a prima facie case for suspending Schmidt's driving privileges in that evidence was presented to show that Schmidt was arrested on reasonable grounds that he had driven a motor vehicle while intoxicated, that the arresting officer read Schmidt the Implied Consent Law verbatim, and that Schmidt called a lawyer and then unequivocally refused to submit to a chemical blood alcohol test.

Schmidt contends that the trial court did not err in granting his motion for directed verdict because 1) the Director did not make a prima facie case in that law enforcement authority failed to allow Schmidt, after his request, a twenty-minute opportunity to contact an attorney; 2) the Director did not make a prima facie case in that law enforcement authority omitted statutorily necessary information in the implied consent warning to advise Schmidt of his rights, the consequences of waiving those rights, and to make an informed choice about exercising his rights; and 3) a directed verdict was proper in

that reasonable persons would not differ in viewing the evidence in a light most favorable to the Director that Schmidt was denied twenty minutes to contact an attorney and was improperly advised of the implied consent provisions of § 577.041.1.

In reviewing a directed verdict in favor of a party, the court must view the evidence in the light most favorable to the non-moving party. *Rinne v. Director of Revenue*, 13 S.W.3d 658, 660 (Mo.App. W.D.2000). The court must give the non-moving party the benefit of all permissible inferences and ignore contrary evidence and inferences in order to determine whether the non-moving party has made a submissible case. *Id.* "A trial court should grant a directed verdict only if reasonable persons would not differ on the correct disposition of the case." *Id.*

A submissible case is made where every fact essential to liability is predicated upon legal and substantial evidence. *Seippel–Cress v. Lackamp*, 23 S.W.3d 660, 666 (Mo.App. W.D.2000). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Id.*, quoting *Hurlock v. Park Lane Medical Ctr., Inc.*, 709 S.W.2d 872, 880 (Mo.App.1985). The issues of whether the evidence is substantial and whether the inferences are reasonably drawn are questions of law. *Seippel–Cress*, 23 S.W.3d at 666.

Section 577.041.1 provides as follows:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of

the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. *If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.* In this event, the officer shall, on behalf of the director of revenue, serve the notice of license revocation personally upon the person and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation.

(Emphasis added.)

In *McMaster v. Lohman*, 941 S.W.2d 813, 815–16 (Mo.App. W.D.1997), we stated as follows:

To uphold a driver's license revocation for failure to submit to chemical testing, the trial court must affirmatively find that (1) the driver was arrested, (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and (3) the driver refused to submit to the test. § 577.041.4. The Director of Revenue has the burden of proof, and failure to satisfy the burden will result in reinstatement of the license to drive a motor vehicle.

Section 577.041.1 provides a twenty-minute opportunity for detained persons to consult an attorney before deciding whether to submit to a chemical test to determine the percentage of alcohol within their blood. *McMaster*, 941 S.W.2d at 817. Section 577.041.1's twenty-minute waiting period begins running immediately after the officer has informed the driver of the Implied Consent Law. *Id.* In the context of the Implied Consent Law, a "refusal" to submit to a chemical test means declining to take the test when requested to do so of one's own volition. *Id.*

> [T]he purpose of section 557.041.1[sic] is met when the driver attempts to contact an attorney unsuccessfully and the twenty minute statutory period expires or the driver abandons the attempt. A request to speak with an attorney after the provisions of the Implied Consent Law are stated to the arrestee abates the process for the twenty-minute waiting period or until the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty minute period.

*Id.*

In *Wall v. Holman*, 902 S.W.2d 329, 331 (Mo.App. W.D.1995), a motorist contended she was only given seven minutes to contact an attorney after being read the Implied Consent Law. Thus, the motorist argued, she was not provided a reasonable opportunity to contact a lawyer as specified by § 577.041.1 and could not be deemed to have unequivocally refused to submit to a chemical test. *Wall*, 902 S.W.2d at 331. In finding the motorist's contention to be without merit, we stated as follows:

> [T]he purpose of the "twenty-minute" provision in section 577.041.1 is to provide a motorist with a reasonable opportunity to contact a lawyer. The purpose of section 577.041.1 is met when the driver unsuccessfully attempts to contact a lawyer or lawyers and abandons the attempt. The statutory language permits a motorist up to twenty minutes to contact an attorney if the arrested party wants to speak to an attorney to obtain legal advice. It does not, however, mandate that arresting officers wait until the expiration of the twenty minutes if the driver has made all the attempts he wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed. To hold otherwise would give a motorist an absolute right to delay the process for twenty minutes even if the person ceases attempting to contact a lawyer and indicates exactly what he intends to do.

*Id.*

In the present case, Officer Peeler testified that he did not remember whether or not Schmidt talked to his attorney on the phone, but as soon as he got off the phone, Schmidt "refused to take the test." At that point, Officer Peeler ran the machine as a refusal and marked the refusal on the implied consent form. There is no indication from the record that Schmidt's refusal to submit to the test was in any way equivocal or conditional.

We hold that the Director made a prima facie case for upholding the revocation of Schmidt's driver's license, in that she presented evidence that Schmidt was arrested on reasonable grounds that he had driven a motor vehicle while intoxicated, that Officer Peeler read Schmidt the Implied Consent Law verbatim, and that Schmidt called a lawyer and then unequivocally re-

fused to submit to a chemical blood alcohol test.[2]

The trial court granted Schmidt a directed verdict at the close of the Director's case and thus Schmidt did not have an opportunity to present evidence. *Dickerson v. Wilson,* 15 S.W.3d 56, 59 (Mo.App. W.D.2000). It is possible that Schmidt could present evidence which, if believed, might refute the Director's showing. *Id.* Thus, the case must be remanded for new trial. *Id.*

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

EDWIN H. SMITH, P.J., and SMART, J., concur.

**2.** Schmidt argues that the Director did not make a prima facie case in that law enforcement authority omitted statutorily necessary information in the implied consent warning to advise of his rights, the consequences of waiving those rights, and to make an informed choice about exercising his rights. However, Officer Peeler testified that he read the Im-plied Consent Law to Schmidt verbatim. No contrary evidence was presented. If, on remand, Schmidt chooses to present contrary evidence, he may do so. Furthermore, there is nothing in the record to support Schmidt's contention that he was only given a ten-minute period *prior* to the reading of the Implied Consent Law to contact an attorney.