**Rebecca KEIM, Petitioner/Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent/Respondent.**

**No. ED 80380.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 1, 2002.

[redacted]

15. The Bank filed with this Court a Motion for Award of Attorney's Fees expended on the appeal.

Terry J. Flanagan, Terry J. Flanagan Law Office, St. Louis MO, for Appellant.

Da–Neil Cunningham, Assistant Attorney General's Office, St. Louis, MO, for Respondent.

SHERRI B. SULLIVAN, Judge.

### Introduction

Rebecca Keim (Appellant) appeals from the trial court's Order and Judgment (Judgment) affirming and adopting the Commissioner's Findings and Recommendations (Recommendations) revoking Appellant's driver's license for one year following Appellant's refusal to submit to a chemical test after being stopped for suspicion of driving while intoxicated. We reverse.

## Factual and Procedural Background

The evidence presented at trial includes the following. On November 18, 2000, Kirkwood Police Officer Chad Walton (Walton) initiated a traffic stop of the vehicle driven by Appellant after observing her vehicle travel at a speed higher than the posted speed limit. Walton suspected that Appellant was intoxicated because he noticed a strong odor of alcohol on her breath, her eyes were glassy and bloodshot, and she fumbled with her wallet when she retrieved her identification. Walton asked Appellant to submit to field sobriety tests, which she did. Appellant failed the three field sobriety tests she was given.

At 12:45 a.m., Walton arrested Appellant for driving while intoxicated. At 1:24 a.m., Walton asked Appellant to submit to a chemical test of her breath for the purpose of determining the alcohol content of her blood. In conjunction with this request, Walton informed Appellant of the Missouri Implied Consent Law, and that the evidence of her refusal to take the test may be used against her in a court of law and her refusal would result in the immediate revocation of her driver's license.

Also at 1:24 a.m., Appellant requested to speak with an attorney, and telephoned Robin Ellis (Ellis) for advice. It is unclear from the record whether Appellant ever reached Ellis. At 1:33 a.m., nine minutes after advising Appellant of the Missouri Implied Consent Law, Walton determined that Appellant refused to submit to a chemical test and issued her a fifteen (15) day driving notice.

On November 28, 2000, Appellant filed a Petition for Review of License Revocation. A hearing was held before a Commissioner on August 30, 2001. The Director of Revenue (Director) submitted the case on the certified records of the Department of Revenue, including the notice of revocation, alcohol influence report and accompanying narrative prepared by Walton and Appellant's driving record. Walton did not testify. Appellant presented no evidence, but did argue the issue that is now before us on appeal.

On September 4, 2001, the Commissioner entered her Recommendations denying Appellant's petition and sustaining the Director's revocation of Appellant's driving privileges. Appellant filed a Motion for Reconsideration by Judge and/or Objections (Motion for Reconsideration). On October 29, 2001, the trial court entered its Judgment denying Appellant's Motion for Reconsideration and adopting the Commissioner's Recommendations. Appellant timely filed this appeal.

## Point on Appeal

In her only point on appeal, Appellant maintains that the trial court erred in affirming and adopting the Commissioner's Recommendations and thereby entering Judgment against Appellant where said Judgment found that Appellant did knowingly and unequivocally refuse to submit to a chemical test of her breath because any refusal of this chemical test was equivocal where Appellant requested to speak with an attorney at 1:24 a.m. and the arresting officer found that Appellant refused to submit to a chemical test at 1:33 a.m. when she was not granted at least twenty minutes to contact an attorney. Appellant argues that Section 577.041 [1] provides that upon an individual's request to speak with an attorney said individual shall be granted a reasonable opportunity, in other words, twenty minutes, to contact an attorney. Appellant maintains Walton only granted Appellant nine minutes to contact

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

an attorney, and this violation of Section 577.041 renders Appellant's subsequent refusal equivocal and thus does not warrant the revocation of her driving privileges for a one year period.

## Standard of Review

We affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Rain v. Director of Revenue,* 46 S.W.3d 584, 587 (Mo.App. E.D. 2001). However, we are not required to defer to the trial court's findings when the evidence is uncontroverted and the case is virtually one of admitting the facts or when the evidence is not in conflict. *Id.*

## Discussion

■ A request by a motorist to speak with an attorney after the provisions of the implied consent law are stated abates the process for a twenty-minute waiting period, or until the driver ceases attempting to contact an attorney and indicates that he or she intends to make no additional attempts to contact an attorney within a twenty-minute period. Section 577.041.1; *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App. W.D.1997). The purpose of the twenty-minute provision in Section 577.041.1 is to provide a motorist with a reasonable opportunity to contact an attorney. *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo.App. W.D.1995). This purpose is met when the driver unsuccessfully attempts to contact an attorney and abandons the attempt. *Id.*

■ At the hearing, the Director has the burden of proof to support her revocation of a driver's license for refusal to

submit to a breath alcohol test. *Lorton v. Director of Revenue,* 985 S.W.2d 437, 440 (Mo.App. W.D.1999); *Rain v. Director of Revenue,* 46 S.W.3d 584, 587 (Mo.App. E.D.2001). The failure to satisfy that burden will result in the reinstatement of the license to drive a motor vehicle. *Lorton,* 985 S.W.2d at 440. That burden includes proof that the driver has ceased attempting to contact an attorney and indicates that she intends to make no additional attempts to contact an attorney within the twenty-minute period. *Id.* at 441.

■ The Director failed to present any evidence that Appellant ceased attempting to contact an attorney or that she indicated that she intended to make no additional attempts to contact an attorney. In fact, the only evidence in the record that Appellant actually telephoned an attorney consists of 3 queries on the Alcohol Influence Report: "Did Subject request attorney prior to test(s)," "Time Subject asked for attorney," and "Name of person phoned for advice." Walton checked "yes" for the first query, noted "1:24 [AM]" for the second, and wrote "Robin Ellis" for the third. Walton's narrative only indicates that "It should be noted that [Appellant] refused to submit to a blood alcohol test of her breath to which a 15–day driving notice was issued by this Officer." This conclusion is insufficient to sustain the Director's burden of proof. Absent the necessary showing of futility in the effort to contact an attorney or abandonment of the effort, we find that the record does not support that Walton provided a reasonable opportunity for Appellant to contact an attorney. *See McMaster,* 941 S.W.2d at 817.[2]

■ The case law on Section 577.041.1 also sets forth a need to show prejudice on the part of the driver.

---

**2.** We note that the Director may have sustained her burden by presenting Walton's tes-

timony, which she did not do.

Under the language of section 577.041.1, a driver must be afforded twenty minutes to contact an attorney after he or she has been advised of the Implied Consent Law. *Glastetter v. Director of Revenue*, 37 S.W.3d 405, 407 (Mo.App. E.D.2001). The fact that the requirements of section 577.041.1 are not satisfied does not, however, automatically warrant relief to the driver, but instead requires that the driver be actually prejudiced as a result of the officer's noncompliance with the statutory requirements. *Id.* Under the actual prejudice standard, the issue is whether the driver suffered any actual prejudice as a result of being denied twenty minutes to contact his or her attorney after being advised of the Implied Consent Law. *Id.* *Hunter v. Director of Revenue*, 75 S.W.3d 299, 304 (Mo.App. E.D.2002).

The cases which have established this test have not articulated who has the burden to show actual prejudice, or the absence of actual prejudice. For example, in *Glastetter*, the driver was informed that he could contact an attorney. At 3:09 a.m., after arriving at the police station, the driver requested an attorney. The police officer waited for the driver to contact his lawyer before administering the breath test. The driver called a friend, asking him to contact his attorney. Several minutes passed without any response from the friend or his lawyer, and the driver called his friend again at 3:21 a.m. At 3:30 a.m., the officer read Missouri's Implied Consent Law to Driver. Eighteen minutes later, at 3:48 a.m., the friend contacted the police station and informed the driver that his lawyer instructed him to take the breath test. The driver indicated to the officer that he wanted to take the breath test pursuant to instructions from his attorney, but the officer refused to allow him to take the breath test and, pursuant to Section 577.041, the driver's driving privi-

leges were revoked for such refusal. The driver filed a petition for review, and the trial court set aside the revocation. We affirmed that decision on appeal, finding that the driver was actually prejudiced. *Id.* at 406–407.

In *Hunter*, the arresting officer informed the driver, Hunter, of the Implied Consent Law at 8:39 a.m. and sixteen minutes later, at 8:55 a.m., Hunter refused to take the chemical test. The arresting officer's narrative provided "I advised Hunter of Missouri's Implied Consent and she requested to speak with her attorney. She was given the telephone and she stated that she was calling her attorney, but refused to give the name. After her phone call she refused to take chemical test and was issued a copy of the notice of revocation form which she refused to sign." We found that this narrative did not indicate that Hunter's refusal was in any way equivocal, conditional or that she wanted an additional four minutes to contact an attorney. Rather, the record indicated that Hunter completed her call. Based on these findings, we concluded that Hunter was not actually prejudiced, and that the trial court erred in reinstating Hunter's driving privileges based on Hunter not being given twenty minutes to contact her attorney. *Id.* at 304.

In these cases, the facts were clear and fully developed. It was clear that the driver in each instance was either prejudiced or not prejudiced regardless of who had the burden of proof. It is easy to understand why the *Hunter* and *Glastetter* courts did not articulate who had the burden because it made no difference.

■ In the instant case, we do not have a factual record like the ones in *Glastetter* and *Hunter* before us. Walton did not testify about what transpired to cause him to determine that Appellant had aban-

doned her attempts to contact an attorney.[3] We do not even know if she actually did abandon her attempts. The Director chose to rely on evidence contained in Walton's narrative and the Alcohol Influence Report, evidence that is clearly insufficient as to the *relevant*[4] sequence of events after Walton informed Appellant of the Implied Consent Law. We believe that the Director had the burden to show that Appellant was not actually prejudiced. Under these circumstances, the Director did not meet her burden.

For the foregoing reasons, Appellant's point on appeal is granted.

## Conclusion

The Judgment of the trial court is reversed.

WILLIAM H. CRANDALL, JR., P.J., and GLENN A. NORTON, J., concur.

---

**3.** By this statement, we do not mean to imply that proof of prejudice or none thereof cannot be made on the written record alone, without testimony. A *sufficient* narrative and report could certainly carry the burden of proof.

**4.** We note that Walton took the time to include in his narrative, in detail, a multitude of

---

irrelevant facts concerning the sequence of events subsequent to his arrest of Appellant, yet failed to include the facts necessary for us, or for the trial court, to determine whether Appellant's refusal was knowing and unequivocal.