Thanos **BACANDREAS**, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI**, Appellant.

No. ED 81250.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 11, 2003.

**1.** Unless otherwise indicated, all Rule references are to the Missouri Court Rules (2002).

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl Caponegro Nield, Jefferson City, for appellant.

William Goldstein, Stanley Goldstein, Eli Karsh, St. Louis, for respondent.

WILLIAM H. CRANDALL, JR., Presiding Judge.

The Director of Revenue (Director) appeals from the judgment reinstating Tha-

nos Bacandreas's driving privileges. We affirm.

Director notified Bacandreas that his driving privileges would be revoked for failing to take a chemical test of his blood. Bacandreas filed a petition for review in the circuit court. The court assigned the case to a traffic commissioner. The case was submitted on the certified records of the Department of Revenue including among other things the Alcohol Influence Report and Investigative Report with a narrative portion.

The following is derived from portions of the submitted certified records. On the evening of October 21, 2000, a police officer observed Bacandreas's vehicle traveling at a high rate of speed. When the vehicle turned, the officer heard the tires squealing and a loud bang. The officer believed the vehicle struck a lane divider. The officer then saw the vehicle tailgate another vehicle and drive by that vehicle on the shoulder. The officer stopped the vehicle and in the backseat saw a "six pack" container of beer with three bottles missing. The officer smelled alcohol on Bacandreas's breath and he admitted to drinking three beers. Bacandreas's eyes were bloodshot and glassy and his speech was slurred. The officer administered field sobriety tests some of which Bacandreas failed. Bacandreas took a portable breath test that indicated the presence of alcohol. The officer arrested Bacandreas for driving while intoxicated. When the officer asked Bacandreas whether he had smoked any marijuana, he said that about three days before he had taken three hits. The officer read the Implied Consent Law to Bacandreas and he agreed to take a breath test. The test indicated a blood alcohol content of .067.[1] At 11:16 p.m., the officer read the Implied Consent Law to Bacandreas for a second time and asked him to submit to a blood test. At that time, Bacandreas told the officer his attorney's name and asked to speak to him. Bacandreas did not know his attorney's phone number. After attempts to locate the number using the phone book were unsuccessful, Bacandreas agreed to take the blood test. As the officer drove into the hospital entrance for the blood test, Bacandreas asked the officer why he was asking for the test. The officer told Bacandreas that the blood test was for drugs. Bacandreas stated he would not take the test until he spoke with his attorney. At Bacandreas's request, the officer called Bacandreas's sister. But she did not know the attorney's phone number and Bacandreas refused to ask his sister for any advise. According to the officer, "as [a] result of Bacandreas'[s] refusal to answer any questions, and the fact that he stated he would not take the test until he ha[d] spoken with his attorney, Bacandreas received a refusal to take a chemical test."

The commissioner found that the officer had probable cause to arrest Bacandreas for driving while intoxicated but that Bacandreas did not refuse to submit to a chemical test. The commissioner recommended that Bacandreas's driving privileges be reinstated. The circuit court adopted the commissioner's findings and recommendations as the judgment of the court. Director appeals from this judgment, raising one point.

 We will affirm the trial court's judgment unless there is no substantial

---

1. In 2000, section 302.505 stated in part that a person's license shall be suspended or revoked if "the person was arrested upon probable cause to believe he was driving a motor vehicle while the blood alcohol concentration in the person's blood or breath was *ten-hundredths* [now eight-hundredths] of one percent or more by weight of alcohol in his blood...." (emphasis added).

evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). However, we are not required to defer to the trial court's judgment when "the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence...." *Id.* At a hearing, Director has the burden of proof to support the revocation of a person's driver's license for refusal to submit to a chemical test. *Keim v. Director of Revenue*, 86 S.W.3d 177, 180 (Mo.App. E.D.2002). The failure to satisfy that burden will result in the reinstatement of the person's driver's license. *Id.* The issues at the post-revocation hearing were limited to: (1) whether Bacandreas was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe that Bacandreas was driving a motor vehicle in an intoxicated condition; and (3) whether or not Bacandreas refused to submit to the test. Section 577.041.4 RSMo.2000; *Hinnah*, 77 S.W.3d at 620.

■ Section 577.041.1 RSMo.2000, provides in part that "If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal." When a person conditions a refusal on consulting with an attorney, but is not given a reasonable opportunity to attempt to do so, the person is not deemed to have refused to submit to a chemical test. *Lorton v. Director of Revenue*, 985 S.W.2d 437, 441 (Mo.App. W.D.1999). A reasonable opportunity has been legislatively defined by

section 577.041.1 as twenty minutes. *Id.* at 440.

The officer read the Implied Consent Law to Bacandreas at 11:16 p.m.[2] The record does not indicate, however, that Bacandreas was given twenty minutes to contact his attorney. But, Director argues that Bacandreas should be deemed to have refused the blood test because his attempts to contact his attorney proved futile and he thereafter abandoned his attempts to contact his attorney. Director also argues that she met her burden to show no actual prejudice to Bacandreas.

■ The purpose of the twenty-minute provision in section 577.041.1 is to provide a person with a reasonable opportunity to contact an attorney. *Keim*, 86 S.W.3d at 180. The purpose is met when the person unsuccessfully attempts to contact an attorney and abandons the attempt. *Id.* Section 577.041.1 does not mandate that arresting officers wait until the expiration of twenty minutes if the person has made all the attempts he or she wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed. *Wall v. Holman*, 902 S.W.2d 329, 331 (Mo.App. W.D. 1995). "To hold otherwise would give a motorist an absolute right to delay the process for twenty minutes even if the person ceases attempting to contact a lawyer and indicates exactly what he intends to do." *Id.* In addition, the fact that the requirements of section 577.041.1 are not satisfied does not automatically warrant relief to a person, but instead requires that the person be actually prejudiced as a result of an officer's non-compliance with the statutory requirements. *Glastetter v. Director of Revenue*, 37 S.W.3d 405, 407 (Mo.App. E.D.2001). Under the actual prejudice standard, the issue is whether

---

**2.** Section 571.020.2 RSMo.2000, allows an officer to request up to two chemical tests.

*Wilson v. Director of Revenue*, 35 S.W.3d 923, 927 (Mo.App. W.D.2001).

the person suffered any actual prejudice as a result of being denied twenty minutes to contact his or her attorney after being advised of the Implied Consent Law. *Id.* Director bears the burden on this issue. *Keim,* 86 S.W.3d at 181–82.

 The officer asked Bacandreas to take a blood test and then read the Missouri Implied Consent Law to Bacandreas at 11:16 p.m. Bacandreas asked to speak with his attorney. Although at one point Bacandreas agreed to take the blood test, he restated his desire to speak with his attorney. The officer's narrative does not state the time when Bacandreas agreed to take the blood test, restated his desire to speak with his attorney or when the officer determined that Bacandreas refused to submit to the test. The Alcohol Influence Report also does not have the time when Bacandreas was deemed to have refused the test.[3] Under these circumstances, Director did not meet her burden to show that Bacandreas had ceased attempting to contact his attorney and that he intended to make no additional attempts to contact an attorney within the twenty-minute period. Furthermore, the officer determined that Bacandreas refused the blood test because he would not take the test until he spoke to his attorney and he refused to answer any questions. Director did not meet her burden to show that Bacandreas was not actually prejudiced by being denied twenty minutes to contact his attorney. Director's point is denied.

The judgment is affirmed.

SHERRI B. SULLIVAN and GLENN A. NORTON, JJ., concur.

---

**3.** The Alcohol Influence Report does show that Bacandreas agreed to take the breath test at 10:52 p.m.