Cindy FLOYD, Appellant,

v.

**DIRECTOR OF REVENUE,**
Respondent.

No. ED 81868.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 1, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 21, 2004.

Application for Transfer Denied
Aug. 24, 2004.

Jay R. Burns, Jr., Clayton, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Ryan Harding, Jefferson City, MO, for respondent.

**WILLIAM H. CRANDALL, JR.,** Judge.

Cindy Floyd filed a petition for review of the revocation of her driving privileges by the Director of Revenue (Director). A prosecutor confessed judgment. Director filed a motion to set aside this judgment for lack of subject matter jurisdiction. The trial court granted the motion and dismissed Floyd's petition for review. Floyd appeals. We reverse.

On September 24, 2001, Floyd was involved in a traffic accident and taken to a hospital. Missouri Highway Patrol Corporal D.E. Caldwell investigated the accident and spoke to Floyd in the emergency room. The following is adduced from a narrative supplement completed by Corporal Caldwell describing what occurred at the hospital. Floyd "was very upset and asking for her daughter." Floyd became very uncooperative with the emergency staff and stated that she wanted to leave.[1] Restraints were used to prevent Floyd from injuring herself. Corporal Caldwell told Floyd that she was under arrest for driving while intoxicated, advised Floyd of her *Miranda* rights and read Missouri's implied consent law to Floyd. Corporal Caldwell asked Floyd to take a chemical test of her blood and she refused.

The parties would later stipulate that Corporal Caldwell placed a notice that Floyd's driving privileges were being revoked in her purse.

On December 21, 2001, Floyd filed a petition for review of Director's revocation of her driving privileges. Floyd alleged, among other things, that she first learned of the revocation on November 26, 2001, when her attorney requested her driving record. An assistant prosecuting attorney for St. Charles County appeared for Director. On February 4, 2002, the prosecutor, "pursuant to plea agreement," confessed judgment on Floyd's petition for review.[2] That same day Floyd pleaded guilty to driving while intoxicated.

---

1. The narrative also states that the officer smelled a strong odor of an alcoholic beverage coming from Floyd, her speech was slurred, and her eyes were bloodshot and dilated.

2. In the judgment, the prosecutor admitted Floyd's allegations that she first learned of her license being revoked on November 26, 2001, when her attorney requested a copy of her driving record, Director neither directly nor by the arresting officer informed her of Director's intent to revoke her driving privileges prior to November 26, 2001, and she did not refuse to take a chemical test.

On February 13, 2002, Senior Counsel for Director entered an appearance. Two days later, Director filed a motion to set aside the February 4, 2002 judgment for lack of subject matter jurisdiction.[3] Director alleged that the arresting officer gave Floyd notice of the revocation on September 24, 2001. Director further alleged that the trial court lacked subject matter jurisdiction because Floyd's December 21, 2001 petition was filed more than thirty days after she received notice of the revocation. The motion provides that it was made "pursuant to Rule 75.01." Thereafter, the parties stipulated that Corporal Caldwell placed the notice of revocation of Floyd's driving privileges in her purse "while [Floyd] and her purse were in the hospital room." The parties also stipulated that Floyd's mental and physical condition was as described in Corporal Caldwell's narrative and that Floyd was not "lucid," or "clearly thinking."

On May 21, 2002, the trial court entered judgment granting Director's motion to set aside the February 4, 2002 judgment. The court also dismissed Floyd's petition for review for lack of subject matter jurisdiction. Floyd appeals, raising five points.

■ In her first point, Floyd argues that the trial court erred in granting Director's "Rule 75.01 motion" to set aside the February 4, 2002 judgment. Floyd emphasizes that Director's motion specifically invoked relief only under Rule 75.01 and no other "procedure." Rule 75.01 states in part that a "trial court retains jurisdiction over judgments during the thirty-day period after entry of judg-

ment...." Floyd contends that under Rule 75.01 the court's jurisdiction expired thirty days after February 4, 2002, and therefore the judgment entered on May 21, 2002 was invalid.

The motion is titled "Motion to Set Aside Order for Lack of Subject Matter Jurisdiction," and states that it was being made "pursuant to Rule 75.01." Director argued in the motion that the trial court lacked subject matter jurisdiction because Floyd filed her petition for review more than thirty days after receiving notice of her revocation.

We note initially that the issue of subject matter jurisdiction could have been raised for the first time on appeal. Rule 55.27(g)(3). Moreover, Rule 74.06(b)(4) provides relief from a void judgment and may be filed within a "reasonable time." *West v. Director of Revenue*, 996 S.W.2d 775, 776 (Mo.App. E.D.1999). A judgment entered without jurisdiction, as was argued in the motion at issue, is null and void. *Id.*

■ On February 15, 2002, Director filed the motion to set aside the February 4, 2002 judgment. Even if the motion had been filed more than thirty days after February 4, 2002, the motion could have been filed within a "reasonable time" under Rule 74.06(b). Despite Director's reliance on Rule 75.01, the trial court could have considered the motion as one under Rule 74.06. Accordingly, the trial court could rule on Director's motion challenging jurisdiction more than thirty days after February 4, 2002. *Id.* Floyd's first point is denied.[4]

---

3. This court has previously stated that prosecuting attorneys and Director would do well to coordinate their administrative efforts to avoid the anomaly presented here. *Yanuzzi v. Director of Revenue*, 14 S.W.3d 618, 621 (Mo. App. E.D.1999).

4. In her second point, Floyd argues that the trial court erred in entering its May 4, 2002 judgment "based on [Floyd's] post-trial evidence." Because the motion was proper under Rule 74.06(b), the trial court could consider the evidence. Floyd's second point is denied.

■ We next address Floyd's third point. Citing *McInerney v. Director of Revenue*, 12 S.W.3d 403 (Mo.App. E.D. 2000), Director states that "In revocation cases, this court has held that the burden of proving lack of notice is on the driver." Director then contends that because the parties stipulated that the arresting officer placed the revocation notice in Floyd's purse when she and the purse were in Floyd's hospital room, the trial court "possessed evidence" to conclude that Floyd failed to satisfy her burden of proving lack of notice.

In *McInerney*, the arresting officer testified that on the date of the arrest he handed the driver the revocation notice, witnessed the driver sign the notice and placed the notice in the driver's property bag. 12 S.W.3d at 404. The driver testified that he was not given the notice by the officer nor did he sign it, but that he later received the form from his attorney. *Id.* This court stated that "Driver bears the burden to prove the petition was filed 'within thirty days **after** notice' of revocation." *Id.* at 405 (quoting *Ezenwa v. Director of Revenue*, 791 S.W.2d 854, 857 (Mo.App.1990))(emphasis added). The driver did not testify or state in his petition the date that he received the form from his attorney. *Id.* This court held that the driver's failure to set forth facts to prove the timely filing of his petition deprived the circuit court of subject matter jurisdiction. *Id.*

The facts and issue in the present case differ from those in *McInerney*. Here, Floyd alleged that she received the notice on November 26, 2001. In *McInerney*, the driver failed to allege or testify when he received notice. Contrary to *McInerney*, the issue in the present case is whether the arresting officer gave the driver, Floyd, proper notice of revocation. Furthermore, Missouri courts have held that Director bears the burden to show compliance with other provisions of section 577.041.1. For example, to demonstrate that a driver refused to submit to a test, Director bears the burden to show that the person was informed of Missouri's implied consent law. *Mayfield v. Director of Revenue*, 100 S.W.3d 847, 851 (Mo.App. S.D. 2003). Director also bears the burden to show that a person has abandoned an attempt to contact an attorney. *Keim v. Director of Revenue*, 86 S.W.3d 177, 180 (Mo.App. E.D.2002). Contrary to Director's assertion, Floyd did not bear the burden of proving that she did not receive notice.

Floyd contends that leaving the notice in her purse on September 24, 2001, was insufficient under section 577.041.1 RSMo. 2000. Floyd argues that the trial court therefore erred in finding that prior to November 26, 2001, she received notice of the revocation of her driving privileges. According to Floyd, the trial court further erred in setting aside her petition for review and the February 4, 2002 judgment should be reinstated.

■ After being personally served with a notice of revocation, a party has thirty days to file a petition for review.[5] *Allen v. Director of Revenue*, 4 S.W.3d 593, 594 (Mo.App. E.D.1999). If a party fails to timely file a petition for review the court lacks subject matter jurisdiction. *Id.* Furthermore, parties cannot waive subject matter jurisdiction and a confession of judgment does not vest a court with subject matter jurisdiction. *Id.*

---

5. The notice of revocation may be made by mail or "delivered to the person." *Grate v. Director of Revenue*, 932 S.W.2d 918, 919 (Mo.App. W.D.1996). There is no claim here that the notice of revocation was mailed to Floyd.

Director contends that Floyd received notice on September 24, 2001. If Director is correct, then Floyd's petition filed on December 21, 2001 was untimely and the court did not err in setting aside the February 4, 2002 judgment.

Section 577.041.1 RSMo. states:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal. In this event, the officer shall, on behalf of the director of revenue, serve the notice of license revocation **personally upon the person** and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person. The officer shall issue a temporary permit, on behalf of the director of revenue, which

is valid for fifteen days and shall also give the person a notice of such person's right to file a petition for review to contest the license revocation.

(emphasis added).

■ Section 577.041.1 provides that the notice of the revocation shall be served "personally upon the person." The legislature's intent is ascertained by considering the plain and ordinary meaning of the words in the statute. *Cox v. Director of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003). The importance that the legislature places on notice to the person is "obvious." *Webb v. Director of Revenue*, 71 S.W.3d 207, 210 (Mo.App. W.D.2002).

Here, the parties stipulated that Corporal Caldwell placed the notice in Floyd's purse "while [Floyd] and her purse were in the hospital room." However, the "upon the person" language of section 577.041.1 indicates that an arresting officer must do more than place the notice in a room where the person is present. This is not a case such as in *McInerney* where the officer gave the person the notice and then placed it in the person's property bag. Furthermore, the stipulation does not provide that the officer ever informed Floyd that he was placing the notice in her purse. This case presents a unique set of circumstances. In the typical case, the officer simply gives the revocation notice to the person. There was evidence that Floyd was being restrained. But the language "upon the person" reflects an intention of the legislature that something more than leaving the notice in Floyd's purse, even with Floyd being present in the room, is required.[6] Floyd's third point is granted.[7]

---

6. The notice completed by Corporal Caldwell has the box checked that provides that a valid license was not surrendered.

7. Floyd argues in her fourth point that the trial court erred in entering the May 21, 2002 judgment "without a further hearing" In her fifth point, she raises the issue that the prosecutor's confession of judgment was part of

The judgment is reversed.[8]

CLIFFORD H. AHRENS, P.J., and LAWRENCE E. MOONEY, J., Concur.

---

her plea bargain. Disposition of Floyd's third point renders these points moot.

8. Floyd's motion to supplement the record and Director's motions to strike portions of Floyd's brief and legal file are denied.