**James Kevin GREEN, Appellant,**

v.

**DIRECTOR OF REVENUE,
Respondent.**

**No. WD 74939.**

Missouri Court of Appeals,
Western District.

Nov. 6, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2012.

Jeffrey S. Eastman, Gladstone, MO, for appellant.

Samuel E. Buffaloe, Jefferson City, MO, for respondent.

Before: ALOK AHUJA, P.J., and VICTOR C. HOWARD and CYNTHIA L. MARTIN, JJ.

ALOK AHUJA, Judge.

The Department of Revenue issued a notice revoking James Green's driving privileges under § 577.041[1] on July 24, 2011, based on his refusal to submit to a chemical test following his arrest for operating a motorcycle while intoxicated. Green sought judicial review of the revocation decision in the Circuit Court of Clay County. The circuit court upheld the revocation of Green's driving privileges. Green appeals. We affirm.

### Factual Background

Missouri State Highway Patrol Trooper Kirby Dunfee stopped Green for exceeding the posted speed limit on his motorcycle at 12:16 a.m. on July 24, 2011. The stop occurred on northbound Interstate Highway 29, north of U.S. Highway 169, in Clay County. Trooper Dunfee noticed a strong odor of alcohol on Green's breath, and that Green had bloodshot eyes and exhibited poor balance and slurred speech. Trooper Dunfee asked Green if he had had anything to drink; Green responded that he had "had a couple earlier." Green failed three field sobriety tests, and a preliminary breath test indicated the presence of alcohol. Trooper Dunfee arrested Green for driving while intoxicated and transported him to the Clay County Detention Center.

Trooper Dunfee informed Green of Missouri's implied consent law, §§ 577.020 to 577.041, and asked Green if he would submit to a breath test. Green asked to speak with an attorney. Trooper Dunfee told Green that he would have twenty minutes to contact an attorney. *See* § 577.041.4. Green gave Trooper Dunfee the name and number of an attorney, Steve Fuller, to contact. Trooper Dunfee dialed the number and handed the telephone to Green. Green spoke to the person on the other end of the line for several minutes. At the conclusion of Green's telephone conversation, he told Trooper

---

1. Unless otherwise indicated, statutory citations refer to the 2000 edition of the Revised States of Missouri (RSMo), as updated through the 2011 Cumulative Supplement.

Dunfee that he had spoken to attorney Fuller. Trooper Dunfee again asked Green whether he would submit to a chemical test of his breath. Green stated, "I'm not sure." Trooper Dunfee told Green that he needed a "yes or no" answer, and Green then replied "no." Green's refusal occurred thirteen minutes after his request to contact an attorney. Because of Green's refusal to submit to chemical testing, Trooper Dunfee issued Green a notice on behalf of the Department of Revenue, revoking his driving privileges.

Green filed a petition seeking judicial review of the revocation of his driving privileges in the Circuit Court of Clay County on August 8, 2011. The trial court held an evidentiary hearing on the petition on January 23, 2012. At the hearing, Green stipulated that he was placed under arrest and that the arresting officer had reasonable grounds to believe that he was driving while intoxicated; the remaining issue for trial was whether Green had unlawfully refused to submit to a test. The only witness at the hearing was Trooper Dunfee. Following the hearing, the trial court entered a judgment upholding the revocation of Green's driving privileges on February 3, 2012. Green appeals.

## Standard of Review

■ In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). To set aside a judgment as "against the weight of the evidence," this Court must have a firm belief that the judgment is wrong. *Id.*

2. Green does not dispute that his motorcycle constitutes a "motor vehicle" within the meaning of § 577.020.1(1). *See generally,*

*White v. Dir. of Revenue,* 321 S.W.3d 298, 307–08 (Mo. banc 2010).

## Analysis

■ Green's argues that he was denied his statutory right to attempt to consult with an attorney before being asked to submit to a chemical test, and therefore his refusal to submit to the test cannot justify revocation of his driving privileges. We disagree.

Under § 577.020.1,

Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.019 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood pursuant to the following circumstances:

(1) If the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition.[2] . . .

Section 577.041.3 requires the Director of the Department of Revenue to revoke the driving privileges of an individual who refuses to consent to a chemical test after being arrested on reasonable grounds to believe that the individual was driving while intoxicated.

In a proceeding under section 577.041 on facts as those presented here, the trial court shall determine only: (1) whether or not the person was arrested;

(2) whether the officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and (3) whether the person refused to submit to the test.

*State v. Laplante,* 148 S.W.3d 347 (Mo.App. S.D.2004).

*Hunter v. Dir. of Revenue,* 75 S.W.3d 299, 302 (Mo.App. E.D.2002) (citations and internal quotation marks omitted); *see also* § 577.041.4. Given Green's stipulation that he was arrested, and that Trooper Dunfee had reasonable grounds to believe that he had been driving while intoxicated, the only issue remaining is whether Green unlawfully refused to be tested. "A 'refusal,' for purposes of § 577.041, means declining of one's own volition to submit to a chemical test authorized by § 577.020 when requested by an officer to do so." *Kotar v. Dir. of Revenue,* 169 S.W.3d 921, 925 (Mo. App. W.D.2005) (citing *Mount v. Dir. of Revenue,* 62 S.W.3d 597, 599 (Mo.App. W.D.2001)).

A driver's request to speak to an attorney gives the driver additional time within which to decide whether to submit to a chemical test.

Section 577.041.1 RSMo 2000, provides in part that "If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal." When a person conditions a refusal on consulting with an attorney, but is not given a reasonable opportunity to attempt to do so, the person is not deemed to have refused to submit to a chemical test. A reasonable opportunity has been legislatively defined by section 577.041.1 as twenty minutes.

*Bacandreas v. Dir. of Revenue,* 99 S.W.3d 497, 500 (Mo.App. E.D.2003) (other citations omitted). The limited right to attempt to contact an attorney recognized by § 577.041.1 is purely of statutory origin; a driver has no constitutional right to consult with an attorney before deciding whether to submit to a blood-alcohol test.

*Akers v. Dir. of Revenue,* 193 S.W.3d 325, 328–29 (Mo.App. W.D.2006).

Where a driver requests to contact an attorney, but is not given an opportunity to do so after being advised of the informed consent law, the law enforcement officer has violated § 577.041.1, and the driver's refusal to submit to testing cannot justify revocation of his driving privileges. *See, e.g., Norris v. Dir. of Revenue,* 304 S.W.3d 724, 726–27 (Mo. banc 2010); *Weil v. Dir. of Revenue,* 304 S.W.3d 768, 770 (Mo.App. E.D.2010); *Schussler v. Fischer,* 196 S.W.3d 648, 653–54 (Mo.App. W.D.2006); *Mount,* 62 S.W.3d at 599–600.

This does not mean, however, that the police must wait twenty minutes in every case in which a driver requests to contact an attorney. Where a driver is given an opportunity to contact an attorney after requesting to speak with one, § 577.041.1 is satisfied if "the twenty minute statutory period expires *or the driver abandons the attempt.*" *McMaster v. Lohman,* 941 S.W.2d 813, 817 (Mo.App. W.D.1997) (emphasis added). "Abandonment occurs where the person made all the attempts he or she wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed." *Snider v. Dir. of Revenue,* 314 S.W.3d 841, 844 (Mo.App. S.D.2010) (quoting *Bacandreas,* 99 S.W.3d at 500). Abandonment is established when "the driver ceases attempting to contact a lawyer and indicates that he intends to make no additional attempts to contact an attorney within the twenty minute period." *McMaster,* 941 S.W.2d at 817 (citing *Wall v. Holman,* 902 S.W.2d 329, 331 (Mo.App. W.D.1995)).

Section 577.041 does not mandate that an arresting officer wait until the twenty-minute period has expired if the person has made all the attempts he or she wants to make and reaches a decision to refuse to submit to the test before the twenty minutes has elapsed. To hold

otherwise would give a motorist an absolute right to delay the process for twenty minutes even if the person ceases attempting to contact a lawyer and indicates exactly what he intends to do. *Krakover v. Dir. of Revenue*, 128 S.W.3d 589, 593–94 (Mo.App. E.D.2004) (citations and internal quotation marks omitted).

Whether a driver in a particular case abandoned or concluded his efforts to contact an attorney is a factual issue, on which we generally defer to the trial court's findings. *Long v. Dir. of Revenue*, 65 S.W.3d 545, 550 (Mo.App. W.D.2001) (citing *Wall*, 902 S.W.2d at 331).

In this case, substantial evidence in the record supports the trial court's determination that Green fully availed himself of his opportunity to contact an attorney before refusing to submit to a blood-alcohol test.[3] Trooper Dunfee read Green the Missouri Implied Consent Law, and asked Green to submit to a chemical test. After Green indicated that he wished to speak with an attorney, Trooper Dunfee told Green that he had twenty minutes in which to attempt to contact one. Trooper Dunfee testified:

A. I provided him the phone.... He gave me the phone number of his attorney to contact. I dialed the number for him, heard the phone ring, and then handed him the phone.

Q. Did he speak to an attorney?

A. I assume, he said he contacted Steve Fuller. I am not aware if

that was an attorney or not, I just know he was speaking with somebody on the phone, so—.

Despite Green's claim that there was no direct evidence that he actually spoke with his attorney, Trooper Dunfee's testimony, as well as the Alcohol Influence Report he completed, support the inference that Green spoke to his attorney for several minutes.[4]

At the conclusion of Green's phone call, thirteen minutes into the twenty-minute statutory period, Trooper Dunfee once again asked Green if he would submit to a chemical test. Green responded, "I'm not sure." Trooper Dunfee then told Green that he needed a yes-or-no answer, and Green responded, "no." The trial court was entitled to find that Green's initial response of "I'm not sure" expressed indecision about whether or not to submit to a chemical test in light of the advice he had received from counsel, not indecision as to whether to take additional steps to contact an attorney. Green said "I'm not sure" in response to a question asking whether he would submit to testing, not whether he wanted to make further efforts to speak with an attorney. Green's subsequent, unequivocal refusal to submit to testing indicates that he had weighed his options and determined that refusal of the chemical test was in his best interests. The evidence contains no indication that, following his conversation with attorney Fuller, Green made any further efforts to contact

---

**3.** Although the trial court made no express factual finding on this issue, under Rule 73.01(c) "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." *See Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 828 (Mo.App. W.D. 2012) (en banc).

**4.** The Alcohol Influence Report prepared by Trooper Dunfee states: "I contacted Steve

Fuller for Green and provided him the phone in the Breath Alcohol Testing Room. After Green finished speaking with Mr. Fuller, I again asked him to submit to a chemical test of his breath Green stated, 'I'm not sure' I informed Green, I needed an answer. Green indicated he did not wish to take the test by stating, 'No.'" Trooper Dunfee testified that the Alcohol Influence Report accurately related the events of July 24, 2011.

an attorney, or made any statement that he wished to pursue further legal advice. The trial court could properly find that Green had concluded his attempts to contact an attorney before refusing to submit to the chemical test.

A trial court may find abandonment based on a driver's actions, even if the driver does not expressly state that he has concluded his efforts to contact an attorney. For example, we reversed trial court judgments reinstating driving privileges in *Hunter v. Director of Revenue*, 75 S.W.3d 299, 304 (Mo.App. E.D.2002), and in *Schmidt v. Director of Revenue*, 48 S.W.3d 688 (Mo.App. W.D.2001), which involve similar facts. In each case, we found that the drivers had abandoned their efforts to contact an attorney, before the expiration of the twenty-minute period, based on the simple fact that the drivers refused to consent to a chemical test in response to a direct inquiry from a law enforcement officer, after the drivers were given access to a telephone and made a phone call. In neither case was there evidence as to the specific identity of the person with whom the driver spoke: in *Hunter*, the officer testified that the driver " 'stated that she was calling her attorney, but refused to give the name,' " 75 S.W.3d at 304, while in *Schmidt*, the officer testified that " 'I don't remember whether or not he talked to his

attorney on the phone.' " 48 S.W.3d at 689. In addition, neither case indicates that there was any evidence that the drivers did anything following their phone calls to express an intent to abandon further efforts, other than directly responding to renewed inquiries whether they would submit to testing. Similarly, *Wall v. Holman*, 902 S.W.2d 329 (Mo.App. W.D.1995), affirmed a trial court's finding of abandonment where a driver made two unsuccessful attempts to contact an attorney, and then several minutes later refused to submit to testing after being transported to a hospital. We held that, "[a]s the trier of fact, the court could believe [the arresting officer] and find that [the driver] abandoned any further attempt to contact a lawyer after her lack of success at the police station." *Id.* at 331. Other cases have observed that similar facts would have permitted the trial court to find abandonment.[5] None of these cases required an affirmative statement from the driver that he had given up his attempts to contact an attorney, or required the arresting officer to affirmatively ask whether the driver's efforts were concluded. Instead, the drivers' actions, including their explicit refusal to submit to a chemical test after making efforts to contact an attorney, were sufficient to support a finding of abandonment.[6]

---

5. *Snider v. Dir. of Revenue*, 314 S.W.3d 841, 845 (Mo.App. S.D.2010) (trial court could have found abandonment where driver was provided telephone and contacted her parents); *White v. Dir. of Revenue*, 255 S.W.3d 571, 580 (Mo.App. S.D.2008) (trial court could have found abandonment where driver made no effort to look through the phone books provided to him, get up from his chair to use the telephone six-to-eight feet away, or request that officers read attorney listings or dial the phone for him).

6. *Keim v. Director of Revenue*, 86 S.W.3d 177 (Mo.App. E.D.2002), cited by Green, is not to the contrary. In *Keim*, the only evidence

offered by the Director was an Alcohol Influence Report which indicated the time that the driver asked for an attorney and the name of the requested contact, and reported that the driver had ultimately refused to submit to a chemical test. The Alcohol Influence Report contained no information concerning the facilities made available to the driver to contact an attorney, or concerning any efforts made by the driver to speak with an attorney. The Eastern District found that the bare recitation in the Alcohol Influence Report was insufficient to sustain the Director's burden of proving that the driver had abandoned his attempts to contact an attorney; the court noted, however, that "the Di-

Under these decisions, the trial court was entitled to find, as a matter of fact, that Green had abandoned or concluded his efforts to contact an attorney before he refused to submit to a chemical test. Given Green's refusal, revocation of his driving privileges was required by § 577.041.3.

### Conclusion

The circuit court's judgment is affirmed.

All concur.

rector may have sustained her burden by presenting [the arresting officer's] testimony, which she did not do." *Id.* at 180 n. 2. The evidence in this case is far more extensive than in *Keim*, both from Trooper Dunfee's testimony, and from the detailed narrative in the Alcohol Influence Report itself.