OPINION OF THE COURT
Salvatore A. Alamia, J.
The defendant is charged with driving while intoxicated (DWI) in violation of Vehicle and Traffic Law § 1192 (3), failing to maintain lane in violation of Vehicle and Traffic Law § 1128 (a), and two counts of failing to stop at a stop sign in violation of Vehicle and Traffic Law § 1172 (a). On April 27, 2007, a Dunaway /Huntley /Mapp and refusal hearing was held to determine the admissibility at trial of evidence obtained against the defendant, including evidence of statements allegedly made by the defendant and evidence of the defendant’s refusal to submit to a chemical test. The parties were given the opportunity to submit written closing statements, which have since been received.
The sole witness at the hearing was Police Officer Robert Ta-lay, a police officer with the Suffolk County Police Department, who testified on behalf of the People. Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact and conclusions of law.
Findings of Fact
Officer Talay has been a police officer with the Suffolk County Police Department for 20 years and is assigned to the Sixth Precinct patrol section. He has experience and training in DWI detection, and has made over 400 DWI arrests.
On the evening of June 29, 2006, Officer Talay was on patrol in a marked patrol car, working a 9:00 p.m. to 7:00 a.m. tour of duty. At approximately 11:50 p.m. on that date, the officer was *777 driving on Route 25A in Setauket, Town of Brookhaven, County of Suffolk, when he observed a vehicle in front of him traveling westbound on Route 25A at a high rate of speed in a 45 mile per hour zone. The officer followed the vehicle, attempting to close the distance between the two vehicles. The defendant’s vehicle made a right turn onto Ridgeway Avenue. The officer observed that the vehicle’s wheels crossed over the double solid yellow lines on Ridgeway Avenue and that the vehicle drove through two stop signs without coming to a stop.
Officer Talay put on his emergency lights and pulled the vehicle over onto the shoulder of Ridgeway Avenue. The officer approached the vehicle and asked the driver, whom he identified as the defendant, for his license, registration and insurance card. The defendant fumbled as he produced his license and insurance card, and the officer observed that an odor of alcohol was coming from the vehicle. The officer asked the defendant if he’d been drinking, and the defendant answered “I had a few drinks tonight.” The officer observed that the defendant had slurred speech and that his eyes were glassy and bloodshot.
The officer asked the defendant to step out of the vehicle and to walk to the rear of the vehicle. The defendant was very unsteady on his feet and had to use a hand to brace himself on the side of the vehicle in order to get out and walk to the rear of the vehicle. The officer administered several field sobriety tests to the defendant, specifically, the horizontal gaze nystagmus test, the walk and turn test, the one-legged stand and the SD-2 Alco-Sensor field breath test, all of which he failed. At approximately 11:50 p.m., Officer Talay made a determination that the defendant was intoxicated. He placed the defendant under arrest and transported him to the Sixth Precinct, detecting the odor of an alcoholic beverage in the car during the ride.
At 12:46 a.m., after processing the defendant, Officer Talay read the “chemical test request” portion of the alcohol/drug influence report to the defendant (People’s exhibit 1). When asked if he would submit to a chemical test, the defendant asked to speak to a lawyer. The officer then read the Miranda warnings to the defendant and the questions printed in that portion of the form. The defendant again indicated that he wished to contact a lawyer and did not wish to talk to the officer without a lawyer. The defendant was given the opportunity to make a phone call at 12:50 a.m., and he received a call at 1:03 a.m. The officer’s testimony indicated that he assumed the call was from the defendant’s attorney, but when pressed on the issue, the officer testified that the defendant talked to “somebody.”
*778 At 1:24 a.m. and 1:34 a.m., Officer Talay asked the defendant if he would submit to a chemical test, and the defendant gave no response. At 1:36 a.m., attorney John Demonico called and spoke with Officer Talay, informing him that he was the defendant’s attorney. At 1:40 a.m., Officer Talay asked the defendant if his attorney had advised him to take a chemical test or not, and the defendant’s response was “No.” The officer asked the defendant to initial the form he had read to him and indicate either “consent” or “refuse” on the form. The defendant wrote the word “refuse” and signed his name in the space provided on the form.
Conclusions of Law
A traffic stop constitutes a limited seizure of the person of each occupant of the vehicle which, to be constitutional, must be justified at its inception. (People v Banks, 85 NY2d 558, 562 [1995], cert denied 516 US 868 [1995].) Officer Talay’s observations of the defendant’s numerous violations of the Vehicle and Traffic Law, including speeding, crossing over the double yellow lines and driving through two stop signs without stopping, provided the officer with a lawful basis for stopping the vehicle. (People v Robinson, 97 NY2d 341 [2001]; People v Irizarry, 282 AD2d 483 [2d Dept 2001], lv denied 97 NY2d 729 [2002]; Vehicle and Traffic Law § 1128 [a]; § 1160 [a].)
Probable cause for a driving while intoxicated arrest exists if the arresting officer can demonstrate reasonable grounds to believe the defendant had been driving in violation of Vehicle and Traffic Law § 1192. (See, People v Kowalski, 291 AD2d 669 [3d Dept 2002]; People v Poje, 270 AD2d 649 [3d Dept 2000], lv denied 95 NY2d 802 [2000].) Officer Talay’s observations of the manner in which the defendant drove his vehicle, together with his observations of the odor of alcohol emanating from the defendant’s vehicle, the defendant’s physical condition, slurred speech, bloodshot and glassy eyes, unsteadiness on his feet, his failing of the field sobriety tests and his admission that he’d been drinking were sufficient to provide the officer with reasonable grounds to believe the defendant had been driving in violation of Vehicle and Traffic Law § 1192 and provided probable cause for the arrest for driving while intoxicated. (See, People v Kowalski, supra; People v Lamb, 235 AD2d 829, 830-831 [3d Dept 1997]; People v Kalwiss, 6 Misc 3d 129[A], 2005 NY Slip Op 50057[U] [App Term, 9th & 10th Jud Dists 2005]; People v McClaney, 135 AD2d 901 [3d Dept 1987]; CPL 140.10 [1].) The *779 court accordingly finds that the defendant’s stop and arrest were based on probable cause, and the evidence obtained as a result thereof is not subject to suppression on that ground.
A defendant who has been temporarily detained pursuant to a routine traffic stop is not considered to be in custody for Miranda purposes. (See, People v Myers, 1 AD3d 382, 383 [2d Dept 2003], lv denied 1 NY3d 631 [2004]; People v Parris, 26 AD3d 393 [2d Dept 2006], lv denied 6 NY3d 851 [2006]; People v Hasenflue, 252 AD2d 829 [3d Dept 1998], lv denied 92 NY2d 982 [1998]; see also, People v MacKenzie, 9 Misc 3d 129[A], 2005 NY Slip Op 51535[U] [App Term, 9th & 10th Jud Dists 2005], lv denied 5 NY3d 807 [2005].) A reasonable initial interrogation during such a stop is therefore held to be merely investigatory and does not require Miranda warnings. (See, People v MacKenzie, supra; see also, People v Mathis, 136 AD2d 746 [2d Dept 1988], lv denied 71 NY2d 899 [1988].)
Officer Talay’s temporary roadside detention of the defendant, after stopping the defendant’s vehicle for a traffic infraction, was permissible and noncustodial in nature, and the officer was not required to administer Miranda warnings before conducting his initial roadside investigation. The defendant’s statement “I had a few drinks tonight,” in response to the officer’s question if he’d been drinking, was not obtained by means of coercion or unfairness. The court accordingly finds that this roadside statement was voluntary and is admissible at trial. (See, People v Mathis, supra; see also, People v Swan, 277 AD2d 1033 [4th Dept 2000], lv denied 96 NY2d 788 [2001]; People v Kearney, 288 AD2d 398 [2d Dept 2001]; People v Noonan, 220 AD2d 811 [3d Dept 1995].)
Alcohol screening tests are considered sufficiently reliable to indicate the presence of alcohol in a person’s breath for the purpose of establishing probable cause for an arrest, but are not sufficiently reliable to determine the actual blood alcohol concentration. (See, People v Thomas, 121 AD2d 73, 76, 78-79 [4th Dept 1986], affd 70 NY2d 823 [1987].) Unlike field coordination tests, alcohol screening tests are not probative of the issue of intoxication and the results are not admissible at trial (see, People v Thomas, supra, 70 NY2d at 825; People v Wright, 1 Misc 3d 133[A], 2003 NY Slip Op 51635DJ] [App Term, 9th & 10th Jud Dists 2003]), unless probative of some other issue (see, People v Thomas, supra, 70 NY2d at 825; People v MacDonald, 227 AD2d 672 [2d Dept 1996], affd 89 NY2d 908 [1996]; Vehicle and Traffic Law § 1194 [2]). The SD-2 *780 field test results therefore shall not be admitted into evidence at trial unless their relevance is otherwise demonstrated (see, People v Thomas, supra, 70 NY2d at 825).
Turning to the refusal issue, the defendant invoked his right to counsel when first asked if he would submit to a chemical test of his blood, and again when he was read the Miranda warnings, also stating that he did not wish to speak to the officer without his attorney present. A defendant has a qualified right to consult with a lawyer before deciding whether to consent to a chemical test provided he makes such a request and no danger of delay is posed. (See, People v Gursey, 22 NY2d 224, 229 [1968]; People v DePonceau, 275 AD2d 994 [4th Dept 2000], lv denied 95 NY2d 962 [2000].) Although the defendant received a telephone call at 1:03 a.m., it cannot be determined from the record whether the person he spoke with was an attorney. The record does establish that John Demonico called the precinct at 1:36 a.m. and identified himself as the defendant’s attorney.
Officer Talay’s two requests that the defendant submit to a chemical test, made before the 1:36 a.m. call by defendant’s attorney, were made in violation of the defendant’s qualified right to counsel, since the record does not clearly show that the defendant was able to speak with an attorney before the requests were made. After counsel’s call at 1:36 a.m., the officer improperly asked the defendant to disclose the content of a privileged communication by asking him if his attorney had advised him to take a chemical test or not, interpreting the defendant’s negative response to his question as a refusal.
The defendant’s negative response to the officer’s improper question was obtained in violation of his Sixth Amendment right to counsel, and the statement itself is subject to suppression on that ground. In addition, it is not clear that this statement was intended to express the defendant’s refusal to take the test. The defendant’s answer “no” was ambiguous as the defendant could have meant either that his attorney had not told him whether or not to take the test, or that his attorney had advised him not to take it. Evidence of a defendant’s refusal to submit to a chemical test is not admissible at trial unless the People show that the defendant “was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that [he] persisted in the refusal.” (Vehicle and Traffic Law § 1194 [2] [f]; see, People v Thomas, 46 NY2d 100, 108 [1978].) The People have not met their burden of demonstrating that *781 the defendant refused to take the chemical test and that he persisted in his refusal, and this evidence shall not be admitted at trial. (See, Vehicle and Traffic Law § 1194 [2] [f]; see also, People v Thomas, supra, 46 NY2d at 108; People v Ratchford, 3 Misc 3d 1109[A], 2004 NY Slip Op 50521[U] [Suffolk Dist Ct 2004].)