OPINION OF THE COURT
Melissa A. Crane, J.
A defendant has a qualified, not an absolute, right to counsel when deciding whether to submit to a breath test to determine blood alcohol content (see People v Smith, 18 NY3d 544, 549 [2012]; People v Gursey, 22 NY2d 224, 227 [1968]). However, once afforded, if that qualified right is to have any meaning, the communication between the defendant and his or her attorney must be private. Because the police prevented that privacy here, the court suppresses the results of the breath test, all statements defendant made while on the phone with his attorney, and that portion of the video showing defendant’s breath test and statements to counsel.
The People charge defendant with violating Vehicle and Traffic Law § 1192 (3) (driving while intoxicated), an unclassified misdemeanor, and Vehicle and Traffic Law § 1192 (1) (driving while ability impaired), a violation, stemming from an incident that occurred on August 5, 2014. Defendant claims that the stop of his vehicle and subsequent arrest lacked probable cause. Consequently, defendant demands that the court suppress all evidence flowing from that stop and arrest, including defendant’s statements and testing. Defendant also moves to suppress the results of his chemical/breath test, because his right to counsel was violated. This court held a combined Huntley/Dunaway/Johnson hearing on these issues on July 29, 2015. The court adjourned the case for briefing and decision on defendant’s motion to suppress to November 17, 2015. Defendant served and filed a post-hearing memorandum of law on September 28, 2015. The People filed and served a response on October 28, 2015. The following constitutes the court’s findings of fact and conclusions of law.
Findings of Fact
Officer Douglas Winn of the Manhattan Traffic Task Force testified for the People. Having observed his testimony and overall demeanor, the court finds his testimony credible. Officer Winn has been a police officer with the New York City Police Department (NYPD) for nine years. He has received training with respect to arrests for driving while intoxicated, the use of *805 the portable breath test, the horizontal gaze nystagmus test,[1] and the IDTU[2] machine. Officer Winn testified that he has made over 181 arrests for driving while intoxicated and assisted in the arrest of 500 more.
On August 5, 2014 at approximately 11:04 p.m., Officer Winn observed the defendant driving a black Dodge Charger through a stop sign, without stopping, at Greenwich Street and Gansevoort Street. Officer Winn, who was driving an unmarked police vehicle, followed defendant’s vehicle. Officer Winn observed defendant drive through another stop sign without stopping, then turn left without signaling at West 13th Street and 9th Avenue. At that point, Officer Winn activated his vehicle’s police lights and instructed defendant, via his PA system, to pull over his vehicle.
Defendant complied. Officer Winn approached defendant’s vehicle on the driver’s side, explained why he had pulled defendant over and asked him for his license. During this initial interaction, Officer Winn smelled a moderate to strong odor of alcohol on defendant’s breath, observed that defendant had watery, bloodshot eyes and a flushed face—all signs of possible intoxication. Officer Winn asked defendant whether he had had anything to drink. Defendant replied “no.”
Officer Winn then asked defendant to exit his vehicle. Officer Winn observed that defendant was a bit slow to exit the vehicle and was unsteady on his feet when walking. Defendant also swayed from side to side when Officer Winn asked him to stand straight with his arms at his sides.
Officer Winn performed two field sobriety tests at the scene. During the first, the horizontal gaze nystagmus test, Officer Winn observed that defendant’s eyes bounced, an indication that defendant had alcohol in his bloodstream. The second test was the portable breath test, the results of which were .07 and .08. While conducting these tests, Officer Winn again asked defendant whether he had had anything to drink. This time defendant replied that he had had a “sip of wine.” At this point, Officer Winn took defendant into police custody and transported him to the 7th Precinct.
*806 When they arrived at the precinct’s IDTU room, Officer Winn commenced videotaping. Defendant asked to speak to an attorney, but the phone inside the IDTU room was not functioning. There were other phones in the precinct behind a desk in another room, next to various property and a gun locker. There were also phones in the detective squad. Officer Winn apparently did not have access to the phones in the detective squad, and could not let defendant use the phones in the room with the gun locker for obvious safety reasons. Instead, Officer Winn allowed defendant to use his (Officer Winn’s) own private cell phone. However, because Officer Winn was concerned that defendant would break his cell phone (Officer Winn explained that, on a prior occasion, a defendant broke his phone), the Officer held the cell phone, while defendant used the speakerphone feature to speak to his wife and then his attorney.
In addition to the Officer being privy to the conversation between lawyer and client on speakerphone, the entire conversation was also recorded on video. Officer Winn explained that, due to chain of custody concerns, once the video starts, it is NYPD policy not to stop it.
When defendant’s attorney asked over the speakerphone why they could not provide a private phone, Officer Winn explained that the test was time sensitive and that defendant was speaking over the Officer’s own cell phone, because the phone in the IDTU room was broken. Officer Winn reiterated that he was not willing to hand over his phone to anyone.
After 24 minutes, Officer Winn again explained that the breath test was time sensitive and therefore defendant’s phone call with his attorney needed to end. After some stalling on the part of defendant, Officer Winn read the refusal warnings to defendant. At that point, defendant agreed to take the breath test. The test indicated that defendant had .07 of one percent by weight of alcohol in his blood.
Defendant’s uncle, Evan Moffitt, who had been out to dinner with defendant, also testified. He claimed that defendant did not have watery eyes, an odor of alcohol or any other sign of intoxication. He also testified that defendant stopped at all stop signs and red lights. However, the uncle admitted that he did not have any professional training with respect to recognizing the signs of intoxication. He also acknowledged that defendant had been drinking wine at dinner.
*807 Conclusions of Law
A defendant may challenge the admissibility of any evidence on the grounds that it was the fruit of an illegal seizure and a court must conduct a hearing to determine whether probable cause supports that seizure and arrest (CPL 710.20 [1]; see Dunaway v New York, 442 US 200 [1979]; Wong Sun v United States, 371 US 471 [1963]). As an initial matter, the People bear the burden of presenting evidence of probable cause to show the legality of police conduct (People v Malinsky, 15 NY2d 86 [1965]; People v Moses, 32 AD3d 866 [2d Dept 2006], Iv denied 7 NY3d 927 [2006]). Once the People have met this burden, the defendant has the ultimate burden of establishing the illegality of police conduct, by a fair preponderance of the evidence (People v Berrios, 28 NY2d 361 [1971]) and that, therefore, the court should suppress the evidence. (People v Sidhom, 204 AD2d 150 [1st Dept 1994].)
I. Probable Cause
A police officer may stop a vehicle without probable cause upon observing a traffic violation (see People v Robinson, 97 NY2d 341 [2001]; People v Irizarry, 282 AD2d 483 [2d Dept 2001], Iv denied 97 NY2d 729 [2002]). Here, Officer Winn testified that he observed defendant drive through two stop signs without stopping and turn without using a turn signal—all violations of New York vehicle and traffic laws. Defendant’s actions provided Officer Winn with probable cause to stop defendant’s vehicle.
An officer has probable cause to arrest a person for committing an offense when it “appear[s] to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator” (People v Vandover, 20 NY3d 235, 237 [2012]). Probable cause for a driving while intoxicated arrest exists if the arresting officer can demonstrate reasonable grounds to believe the defendant had been driving in violation of Vehicle and Traffic Law § 1192 (see People v Kowalski, 291 AD2d 669 [3d Dept 2002]; People v Poje, 270 AD2d 649 [3d Dept 2000], Iv denied 95 NY2d 802 [2000]). Officer Winn’s observations of the manner that defendant drove his vehicle, together with the Officer’s observations of the odor of alcohol emanating from defendant, his bloodshot and watery eyes, his flushed face, unsteadiness on his feet, his failing field sobriety *808 tests,[3] and his inconsistent statements about whether or not he had been drinking, were sufficient to provide the Officer with reasonable grounds to believe the defendant had been driving in violation of Vehicle and Traffic Law § 1192. Accordingly, there was probable cause to arrest defendant for driving while intoxicated (Vehicle and Traffic Law § 1192 [3]; see People v Kowalski; People v Lamb, 235 AD2d 829, 830-831 [3d Dept 1997]; People v Kalwiss, 6 Misc 3d 129[A], 2005 NY Slip Op 50057[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2005]; People v McClaney, 135 AD2d 901 [3d Dept 1987]; CPL 140.10 [1]). The court accordingly finds that the defendant’s stop and arrest were based on probable cause.
II. Violation of Right to Counsel
However, the court suppresses the results of the Intoxylizer and all statements defendant made to his attorney on speakerphone in the IDTU room. Suppression is necessary because the police violated defendant’s limited right to counsel when they would only permit defendant to talk to his lawyer on speakerphone in the presence of third persons.
A. Qualified Right to Counsel in DWI Cases
In People v Gursey (22 NY2d 224 [1968]), the Court of Appeals recognized that a defendant has a qualified right to consult with an attorney about whether to submit to a breath test when under suspicion or arrest for driving while intoxicated. The Court acknowledged that alcohol dissipates rapidly in the body and therefore a breath test is time sensitive (id. at 229). However, so long as communication between lawyer and client does not “interfere unduly” with administration of the breath test, the police cannot “prevent access between the criminal accused and his lawyer” (id. at 227). The Court elaborated that a telephone call to an attorney would conclude in a matter of minutes and therefore would not interfere with the investigative procedure (id. at 228). Accordingly, “the denial of defendant’s requests for an opportunity to telephone his lawyer must be deemed to have violated his privilege of access to counsel” (id.). The Court of Appeals has reaffirmed the rule in Gursey twice in recent years (see People v Smith, 18 NY3d *809 544, 549 [2012] [“(a)s we explained in Gursey, the right to seek the advice of counsel—typically by telephone—could be accommodated in a matter of minutes and in most circumstances would not substantially interfere with the investigative procedure”]; People v Washington, 23 NY3d 228, 234 [2014] [failure of police to notify defendant, after she had consented to chemical breath test, but before she had performed it, that an attorney had telephoned the station on her behalf, violated her qualified right to counsel]). A violation of defendant’s qualified right to counsel generally requires suppression of the breath test results (Smith, 18 NY3d at 550; Washington, 23 NY3d at 232).
B. Privacy and the Attorney-Client Privilege
The right to counsel includes “the right to consult counsel in private, without fear or danger that the People, in a criminal prosecution, will have access to what has been said” (People v Cooper, 307 NY 253, 259 [1954]; see also People v Gamble, 18 NY3d 386, 396 [2012] [“(i)ntrusion upon a client-lawyer conference, whether in the privacy of an office or at the counsel table in court, contravenes our sense of traditional fair play and due process” (citations omitted)]; Coplon v United States, 191 F2d 749, 759 [DC Cir 1951] [the Fifth and Sixth Amendments “guarantee to persons accused of crime the right privately to consult with counsel both before and during trial. This is a fundamental right which cannot be abridged, interfered with, or impinged upon in any manner”]).
Here, defendant’s conversation with his attorney was anything but private. Not only could Officer Winn hear the entire conversation between defendant and his attorney, but he recorded the conversation for posterity on video. It is of no moment that the phones in the IDTU room were broken and there may not have been enough time, given the constraints of the breath test, to round up another phone. Once afforded, if the right to counsel is to have any meaning, the communication between lawyer and client must be private (cf. People v O’Neil, 43 Misc 3d 693, 704 [Nassau Dist Ct 2014] [where officer would not step out of earshot of the conversation, defendant “was placed in the untenable position of having to either forgo providing his attorney with information essential to the advice sought, or waive his Fifth Amendment right against self incrimination”]; People v O’Reilly, 16 Misc 3d 775 [Suffolk Dist Ct 2007] [officer improperly asked the defendant to disclose the content of a privileged communication by asking him if his at *810 torney had advised him to take a chemical test or not and then interpreting the defendant’s negative response to his question as a refusal]).
This result is all the more appropriate given that the police had confiscated defendant’s phone, and, therefore, defendant could not use his own phone to call his attorney. If Officer Winn was so concerned that defendant would have broken the Officer’s phone, he could have given back defendant his own phone to use (see People v Gelaj, 21 Misc 3d 1120[A], 2008 NY Slip Op 52105 [U] [Sup Ct, Bronx County 2008] [police violated defendant’s right to counsel when they refused him access to his cell phone to call his lawyer and did not afford another means for that contact]).
In conclusion, defendant’s qualified right to counsel was effectively destroyed when the officer: (1) placed the entire conversation on speakerphone; (2) stood so close that he could overhear the entire interchange and even answer some questions himself; and (3) recorded the entire conversation on video. Accordingly, the court suppresses: (1) the results of the breath test; (2) any statements defendant made to his counsel; and (3) that portion of the video showing defendant’s breath test and statements to counsel.
People v Youngs (2 Misc 3d 823 [Yates County Ct 2003]), upon which the People rely, is not to the contrary. In that case, the conversation did not take place over speakerphone. Nor was it recorded. Given the myriad ways to communicate these days—text messages, email, instant messaging, social media— there is simply no excuse to place a defendant’s conversation with his attorney on speakerphone and record it on video.
Accordingly, it is ordered that the court grants defendant’s motion to suppress to the extent of suppressing the results of the breath test, the statements defendant made to his lawyer and that portion of the video containing same. The court otherwise denies the motion.

. The horizontal gaze nystagmus test is one of three standardized field sobriety tests that the National Highway Traffic Safety Administration has developed. Nystagmus is the technical term for involuntary jerking or bouncing of the eyeball that can occur with alcohol use.

. IDTU means “Intoxicated Driver Testing Unit.”

. Defendant urges the court to reject the portable breath test as a basis for probable cause, claiming that the People never established a proper foundation for admissibility. However, it is clear that the results of the portable breath test, while perhaps not admissible at trial to establish intoxication, may be used to establish probable cause (see People v Kulk, 103 AD3d 1038, 1039 [3d Dept 2013]).