

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| J.L. WILSON, | ) | *Opinion issued May 12, 2020* |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SC97712 |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Charles H. McKenzie, Judge

The city of Kansas City ("the City") appeals a judgment in favor of James Wilson on his claim of disability discrimination in violation of the Missouri Human Rights Act (MHRA). The City challenges the circuit court's admission of evidence of Mr. Wilson's permanent partial disability rating from his prior workers' compensation claim and its award of litigation expenses to Mr. Wilson. The City's claim that evidence of Mr. Wilson's disability rating was erroneously admitted was not preserved; therefore, no relief on appeal is warranted. The circuit court did err, however, in awarding Mr. Wilson litigation expenses because no statute allows a circuit court to award as "litigation expenses" the expenses incurred by counsel for the prevailing party in an MHRA case. Accordingly, the portion of the judgment awarding litigation expenses is reversed, and the cause is remanded. On

remand, the circuit court may determine which expenses incurred by Mr. Wilson's attorneys, if any, are reasonable out-of-pocket expenses that may be awarded as attorney fees under section 213.111.2.[1]  The circuit court shall, on remand, award Mr. Wilson's attorney fees and costs on appeal.

## Factual and Procedural Background

From 2011 to 2013, the City employed Mr. Wilson as an equipment operator in the solid waste division of its public works department.  While driving a trash truck in 2011, Mr. Wilson suffered an injury to his elbow.  The City selected Dr. Brian Divelbiss to treat Mr. Wilson, and Dr. Divelbiss ultimately diagnosed him with epicondylitis.  After non-invasive treatment options failed, Mr. Wilson had surgery on his elbow in July 2012.

Mr. Wilson was released to return to work after his surgery, but the pain in his elbow recurred.  Mr. Wilson sought further treatment from Dr. Divelbiss.  For purposes of a workers' compensation claim Mr. Wilson filed for the injury to his elbow, Dr. Divelbiss assigned a permanent partial disability rating of 15 percent "at the level of his elbow."  When Mr. Wilson reached maximum medical improvement, Dr. Divelbiss again released him to return to work but with a permanent restriction of "no trash truck driving."

Mr. Wilson presented the restriction to Michael Shaw, an assistant director in the public works department who oversaw the solid waste division.  Mr. Wilson then requested that he be assigned to operate a clam truck on the bulky collection route or another truck with power steering, rather than his current assignment to drive a recycling truck without

---

[1] All statutory citations are to RSMo 2016, unless otherwise noted.

power steering. Mr. Shaw previously had denied Mr. Wilson's pre-injury requests to drive the clam truck because Mr. Wilson did not have the necessary seniority for that assignment. Instead, as an accommodation for Mr. Wilson's restriction, Mr. Shaw offered him a position as a maintenance worker that would have entailed riding on the back of trash trucks picking up trash and recycling or driving a dead animal or scatter truck. Mr. Wilson declined the position, believing he would have lost the seniority he had accumulated as an equipment operator. Mr. Shaw instructed him to submit a request for accommodation to the City.

After Mr. Wilson declined Mr. Shaw's offer, Marvin Davis, an assistant to the director and the human resource liaison for the City's public works department, sent an e-mail to Michael Kitchen, a member of the City's reasonable accommodation committee, and Mr. Shaw. In his e-mail, Mr. Davis told Mr. Kitchen that Mr. Wilson was an equipment operator who had a permanent restriction of no trash truck driving. An hour after that e-mail, Mr. Davis sent a second e-mail stating that, after Mr. Wilson first returned to work without medical restrictions, he went back to the doctor after experiencing pain. When he returned to work the second time, Mr. Wilson had a permanent restriction of "no trash truck driving." Mr. Davis stated that the City's risk management personnel believed Mr. Wilson told his doctor that he did not want to drive trash trucks and, instead, wanted to drive other City vehicles.

Mr. Wilson submitted a request for accommodation to the City with medical records from Dr. Divelbiss in support. The City's reasonable accommodation committee, including Mr. Kitchen, reviewed Mr. Wilson's request and denied it because his restriction was limited to no trash truck driving. Mr. Wilson appealed the committee's decision to the city

3

manager's office. Mr. Kitchen presented the City's position regarding Mr. Wilson's accommodation request at an evidentiary hearing. Mr. Wilson's appeal was denied.

After the City denied Mr. Wilson's request, Mr. Shaw contacted Mr. Wilson and again encouraged him to take a job as a maintenance worker for the same pay he was earning as an equipment operator. According to Mr. Shaw, Mr. Wilson could not meet the minimum qualifications of his job as an equipment operator with a permanent restriction of no trash truck driving. Mr. Wilson again declined the offer to become a maintenance worker, and Mr. Shaw requested the termination of Mr. Wilson's employment because other solid waste division employees had to work overtime to complete Mr. Wilson's work. The City determined Mr. Wilson was unable to perform his regular job duties and terminated his employment in 2013.

In 2014, Mr. Wilson sued the City for disability discrimination and retaliation under the MHRA. Before the beginning of a jury trial in 2017, the City filed a motion *in limine* seeking to preclude Mr. Wilson from presenting Dr. Divelbiss's disability report and workers' compensation rating as evidence or arguing that Dr. Divelbiss or the workers' compensation division found Mr. Wilson "disabled." The City asserted that the question of disability under the workers' compensation statutes was different, unrelated, and irrelevant to the question of disability under the MHRA and that admitting evidence of the rating would be more prejudicial than probative. It also objected to the report as hearsay.

During the course of trial, Mr. Wilson presented Dr. Divelbiss's testimony via a videotaped deposition. Dr. Divelbiss testified about the workers' compensation disability rating he assigned to Mr. Wilson's right elbow and his report. Mr. Wilson's attorney also

4

elicited testimony from Mr. Wilson that he had been "rated as permanently partially disabled." During Mr. Wilson's closing argument, his attorney argued, "[Mr. Wilson] has a permanent partial disability. Permanent, that's pretty easy. Disability, that's pretty easy." Mr. Wilson submitted his claim of disability discrimination to the jury but not his claim of retaliation. The jury returned a verdict in Mr. Wilson's favor, awarding him actual and punitive damages, and the circuit court entered judgment in conformity with the verdict.

Mr. Wilson then filed a motion to amend the judgment to add attorney fees, injunctive relief, costs, expenses, front pay, and increased seniority. The circuit court sustained the motion in part and amended the judgment to award $308,308.75 in attorney fees and $9,644.56 in litigation expenses and to provide that Mr. Wilson's seniority with the City reflect an uninterrupted time of employment.[2] The City appealed, and this Court ordered transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

The City raises two claims of error. First, it claims the circuit court erred in admitting evidence and argument of Mr. Wilson's workers' compensation permanent partial disability rating because its probative value was outweighed by its prejudicial effect. Second, it avers the circuit court erred in awarding Mr. Wilson litigation expenses because no statute authorizes an award of litigation expenses in an MHRA case.

### Objections to Permanent Partial Disability Rating Not Preserved

For its first claim of error, the City contends the circuit court erred in allowing the jury to see Dr. Divelbiss's videotaped deposition testimony regarding Mr. Wilson's

---

[2] Mr. Wilson had been rehired by the City as an equipment operator in the storm water division in 2016.

disability rating report, his report, and the disability rating in the medical records received in evidence at trial. The City claims a permanent partial disability rating in the context of workers' compensation[3] is irrelevant to whether a person is disabled under the MHRA.[4] The City asserts that, even if Mr. Wilson's workers' compensation disability rating has some probative value, its probative value is outweighed by its prejudicial effect because the different definitions of disability in the workers' compensation context and the MHRA context tend to mislead and confuse the jury. The City also contends the statements of Mr. Wilson's counsel in closing argument improperly implied the workers' compensation disability rating proved Mr. Wilson was disabled for purposes of the MHRA.

The City first sought, by filing a motion *in limine*, to exclude evidence of Mr. Wilson's disability rating on grounds that the rating was irrelevant. The City again objected to evidence of Mr. Wilson's disability rating in chambers the morning of trial, but the objection and an ensuing discussion were not on the record.

---

[3] Section 287.190.6(1) of Missouri's Workers' Compensation Law defines a permanent partial disability as "a disability that is permanent in nature and partial in degree." Section 287.190.1 further informs the definition to include injuries caused by "severance, total loss of use, or proportionate loss of use of one or more of the members mentioned in the schedule of losses."

[4] At the time of trial, the MHRA defined disability in section 213.010(4) as:

> a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question.

Section 213.010 was amended after Mr. Wilson's trial, and the MHRA's definitions of disability may now be found under section 213.010(5), RSMo Supp. 2018.

When trial began, the evidence of Mr. Wilson's workers' compensation disability rating was first introduced by playing the videotaped deposition of Dr. Divelbiss. In the deposition, Dr. Divelbiss testified about the contents of the disability rating report, his method for determining the rating, the rating's significance, and the fact he assigned Mr. Wilson's right elbow a permanent partial disability rating of 15 percent. After Dr. Divelbiss's deposition was played for the jury, the following colloquy occurred outside the jury's presence:

> [City's counsel]: While we are here, Your Honor, I would like to put on the record that continuing objection that we talked about this morning to the admissibility of the partial permanent disability rating of 15 percent and the document that sets it forth. And I think that counsel said he was agreeable to that.
>
> [Mr. Wilson's counsel]: That's correct, Your Honor.
>
> THE COURT: Just for the record, we did discuss that in my office prior to opening statements. The City made an objection to the use of that rating and the document that contained that rating. We discussed it in my office. I overruled the City's objection in that respect, and we all agreed at that time that we'd allow [the City] to make the objection during a break, which is now, and that it would be a continuing objection during the course of the testimony related to that rating and the report containing that rating and the doctor's testimony relating to that rating as well. Fair enough?
>
> [City's counsel]: That is accurate.
>
> THE COURT: I will show a continuing objection whenever that rating is discussed, and if the report is shown again as far as that goes, okay?
>
> [City's counsel]: Thank you, Your Honor.

While the objection to evidence regarding Mr. Wilson's workers' compensation disability rating was put on the record after Dr. Divelbiss's testimony and the admission of the document containing his rating, the record shows the circuit court overruled the objection

7

in chambers and approved the City's request that the objection be a continuing objection throughout the trial. The court further agreed the City should put the pretrial, in camera discussion regarding the objection and the circuit court's ruling on the record during a break in the trial

The record, however, does not show the legal basis for the continuing objection. To preserve an objection made in chambers for appellate review, a party must renew the objection in court and make a record that identifies not only the action to which the party is objecting but also the legal basis for the objection. *See State v. Skillicorn*, 944 S.W.2d 877, 888 n.4 (Mo. banc 1997), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888-89 (Mo. banc 2008). An error is not preserved for appellate review when the party renews on the record an objection made in chambers but fails to make a record of the legal basis of the objection. *Johnson v. State*, 103 S.W.3d 182, 189 (Mo. App. 2003).

It is clear the parties had an off-the-record discussion regarding the City's objection to evidence of the rating and report, but nothing in the record shows the legal basis for the City's objection. The continuing objection entered on the record makes no reference to a pleading or other source that reveals the basis of the City's objection, and the City cites no other instance when it objected to evidence of the rating or report at trial and articulated the legal grounds for its objection.

The City claims its motion *in limine* preserved the issue for appellate review. Contrary to the City's assertion, a motion *in limine* "preserves nothing for appellate review." *Stewart v. Partamian*, 465 S.W.3d 51, 55 (Mo. banc 2015). Accordingly, this point is not preserved for appellate review.

8

## Litigation Expenses

The City's second claim of error is that the circuit court erred in awarding Mr. Wilson litigation expenses because there is no statutory authority for an award of litigation expenses in the MHRA. The City argues the MHRA permits a prevailing party to recover only its court costs and attorney fees and the MHRA's provision for "court costs" includes only court costs permitted by explicit statutory authority. Mr. Wilson agrees litigation expenses are generally unavailable without statutory authorization but asserts an award of litigation expenses in an MHRA case is authorized by either section 514.060 as costs or by section 213.111.2 as court costs or attorney fees.

## Court Costs Do Not Include Litigation Expenses

Courts possess "no inherent power to award costs." *State ex rel. Merrell v. Carter*, 518 S.W.3d 798, 800 (Mo. banc 2017). Costs may by awarded only pursuant to express statutory authority. *Id.* "Express statutory authority must be clear, definite, and unambiguous." *State v. Richey*, 569 S.W.3d 420, 423 (Mo. banc 2019). Statutes conferring the power to tax costs are strictly construed. *Merrell*, 518 S.W.3d at 800. Whether a statute authorizes an award of costs is a question of statutory interpretation. Questions of statutory interpretation are reviewed *de novo*. *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 637 (Mo. banc 2019).

The questions presented by the City's claim of error are whether any statute provides for an award of costs in an MHRA case and whether litigation expenses may be awarded pursuant to the authority to award costs. Chapter 514 governs costs in civil cases and authorizes an award of costs in all civil actions except "in those cases in which a different

9

provision is made by law." Section 514.060. Cases brought under the MHRA are such cases "in which a different provision is made by law." In MHRA cases, section 213.111.2 provides:

> The court . . . may award court costs and reasonable attorney fees to the prevailing party, other than a state agency or commission or a local commission; except that, a prevailing respondent may be awarded court costs and reasonable attorney fees only upon a showing that the case is without foundation.

The court of appeals has erroneously viewed section 213.111.2 as an additional grant of authority that supplements the authority found in section 514.060 such that both statutes apply in MHRA actions. *See Jones v. City of Kan. City*, 569 S.W.3d 42, 58 (Mo. App. 2019) (affirming an award of "non-statutory costs" on grounds section 213.111.2 is not limited to statutory costs authorized by section 514.060); *Hesse v. Mo. Dep't of Corr.*, 530 S.W.3d 1, 6 (Mo. App. 2017) (same); *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 880 (Mo. App. 2009) (holding an award of costs in an MHRA case is authorized by both section 514.060 and section 213.111.2). These cases misstate the law. Section 514.060 does not apply when "a different provision is made by law," and section 213.111.2 is such a provision.

Because section 213.111.2 governs the award of court costs in an MHRA case, the question is whether section 213.111.2 authorizes an award of litigation expenses as court costs. Mr. Wilson does not argue any statutory language in section 213.111.2 expressly authorizes litigation costs to be awarded as court costs. He claims, instead, that litigation expenses, generally, may be awarded as court costs because a plaintiff in an MHRA case must be compensated for all the costs of going to court. He invites this Court to follow the

10

court of appeals' decision in *Hesse* and interpret "court costs" as inclusive of litigation expenses. 530 S.W.3d at 6.

The court of appeals in *Hesse* mistakenly interpreted the discretion given the circuit court to award court costs in section 213.111.2 as giving the circuit court "broad" discretion to award non-statutory costs, including litigation expenses. *Id.* In fact, *Hesse* states section 213.111.2 "even gives trial courts discretion 'to follow the federal approach of awarding costs outside the parameters of Section 514.060.'" *Id.* (quoting *Williams,* 281 S.W.3d at 881).

"An item is not taxable as costs in a case unless it is specifically authorized by statute" or by the parties' contract. *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 44 (Mo. banc 1976). Numerous statutes identify specific items that may be taxed as costs. For example, section 488.012 authorizes the taxing as court costs of more than 22 fees, costs, and charges, including filing fees, the cost of testimony transcription, cost of court reporter services, and witness fees. Other authority for taxing various expenses as costs can be found throughout Missouri's statutory codes. *See, e.g.,* section 492.590 (allowing deposition expenses to be taxed as costs); section 488.473 (allowing, in condemnation proceedings, commissioners' compensation to be taxed as costs); section 488.470 (allowing, in cases arising under section 488.470, compensation for "all legal services rendered for plaintiff" to be taxed as costs); section 488.045 (taxing to the defendant the costs of impaneling a jury); section 487.100 (authorizing the expenses of mediation, counseling, or a home study to be taxed as costs). Mr. Wilson, however, fails to cite any statute that identifies generalized litigation expenses as allowable court costs. Because no statute specifically identifies

litigation expenses as court costs, litigation expenses cannot be taxed as costs[5] under section 213.111.2. *See Richey*, 569 S.W.3d at 423-24. To the extent *Williams, Hesse,* and *Jones* hold to the contrary, they are overruled.

## Litigation Expenses May Be Awarded as Attorney Fees

The Court next considers whether section 213.111.2 authorizes an award of litigation expenses as "reasonable attorney fees." The City asserts this Court must limit its interpretation of section 213.111.2 to its plain and ordinary meaning and notes that it does not expressly include litigation expenses like sections 136.315.2, 448.3-111, 547.370, and 600.064. It claims the failure of the statute to expressly provide for the recovery of litigation expenses is evidence the legislature did not intend litigation expenses to be recoverable in an MHRA action.

Mr. Wilson counters that out-of-pocket expenses have long been recoverable as attorney fees in comparable Title VII cases in federal courts. He claims the meaning of section 213.111.2's fee-shifting provision should be informed by federal decisions and interpreted to permit the recovery of out-of-pocket expenses.

Missouri courts follow the American Rule, which provides that, in the absence of statutory authorization or contractual agreement, with few exceptions, parties bear the expense of their own attorney fees. *Incline Vill. Bd. of Trs. v. Edler*, 592 S.W.3d 334, 341 (Mo. banc 2019). As relevant to this case, the legislature enacted section 213.111.2 to authorize an award of "reasonable attorney fees" to the prevailing party in an MHRA action.

---

[5] In fact, Rule 57.03(c)(6) expressly provides one of the expenses Mr. Wilson seeks to recover as costs, the expense of videotaping a deposition, "shall not be taxed as costs."

12

In *Gilliland v. Missouri Athletic Club,* this Court noted that, under section 213.111.2, prevailing claimants receive an award of attorney fees "as a matter of course" but prevailing respondents have to prove the case was "without foundation" to receive an award of attorney fees. 273 S.W.3d 516, 523 (Mo. banc 2009). The Court found the authorization for an award of attorney fees in section 213.111.2 was "similar to a federal counterpart, 42 U.S.C. 1988, under which attorneys' fees are recovered unless there are circumstances that would render an award of such fees unjust." *Id.*

The determination of a reasonable attorney fee is generally committed to the circuit court's discretion. *Id.* Factors relevant to an award of statutory attorney fees are

> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

*Id.* This Court has found factor 6 not particularly relevant in a human rights case but factor 5 significant because "[t]he Missouri legislature, in enacting the human rights act, followed the lead of Congress in the choice of authorizing fees to private attorneys for enforcement of human rights claims, rather than relying principally upon government agencies for such enforcement." *Id.*

Congress, to encourage private enforcement of civil rights claims, authorized courts to award a "reasonable attorney's fee" to prevailing plaintiffs in civil rights actions. *Missouri v. Jenkins*, 491 U.S. 274, 283 n.6. (1989). Likewise, the legislature, by enacting section 213.111.2, authorized Missouri courts to award "reasonable attorney fees." For this

13

reason, Missouri courts, "are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law." *Lampley v. Mo. Comm'n on Human Rights*, 570 S.W.3d 16, 22 (Mo. banc 2019). Federal courts have interpreted a reasonable attorney fee to be one "that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Id.* at 286 (internal citations and quotations omitted). A fee comparable to what is traditional for an attorney compensated by a fee-paying client includes "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client." *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008).[6]

Similarly, the MHRA "recognizes the public purpose served by litigation that vindicates the rights of those who are discriminated against." *Gilliland*, 273 S.W.3d at 523. For that reason, section 213.111.2's provision for court costs and attorney fees seeks to make an MHRA plaintiff whole "by compensating [that plaintiff] for the costs of bringing suit." *Holmes v. Kan. City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 630 (Mo. App. 2012). The MHRA makes a plaintiff whole only if section 213.111.2 authorizes

---

[6] The court of appeals has mischaracterized the federal practice as awarding litigation expenses as costs outside the parameters of statutory authority. *See Jones*, 569 S.W.3d at 58; *Hesse*, 530 S.W.3d at 6; *Williams*, 281 S.W.3d at 881. The federal cases discussed herein, however, demonstrate federal courts are awarding qualifying out-of-pocket expenses as attorney fees, not costs, and doing so pursuant to the express statutory provisions for attorney fees found in 42 U.S.C. sections 1988 or 2000e-5(k). This practice is consistent with Missouri law that an award of costs or attorney fees must emanate from statutory authorization or contractual agreement. *See Garland v. Ruhl*, 455 S.W.3d 442, 446 (Mo. banc 2015).

an award of reasonable attorney fees that includes an attorney's reasonable out-of-pocket expenses normally charged to a fee-paying client.

If, under the prevailing practice of the local community, there are reasonably incurred, out-of-pocket litigation expenses that would normally be charged to a fee-paying client, the circuit court may include those expenses when exercising its discretion, under section 213.111.2, to award a reasonable attorney fee. In the case at bar, however, the circuit court did not include in its award of attorney fees the expenses incurred by Mr. Wilson's attorneys. Rather, the circuit court awarded "litigation expenses" separately from its award of attorney fees. The separate award of litigation expenses demonstrates the circuit court did not consider litigation expenses to be attorney fees and did not determine whether the expenses requested were reasonable out-of-pocket expenses an attorney in the local community would normally charge to a fee-paying client. Therefore, the award of litigation expenses in the judgment is reversed, and the case is remanded. On remand, the circuit court will have the opportunity to consider which, if any, of the out-of-pocket expenses of Mr. Wilson's attorneys can be awarded as attorney fees.

**Motion for Attorney Fees and Costs on Appeal**

Before the case was submitted in this Court, Mr. Wilson filed a motion for attorney fees and costs incurred on appeal, and the Court ordered the motion taken with the case. Section 213.111.2 authorizes a court to award attorney fees to a prevailing party. "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Kader v. Bd. of Regents of Harris-Stowe Univ.*, 565 S.W.3d 182, 190 n.7 (Mo. banc 2019).

15

Mr. Wilson prevailed on his claim for disability discrimination and successfully defended the judgment on appeal, except for the portion awarding litigation expenses. Having succeeded on a significant issue, Mr. Wilson is a prevailing party. This Court is authorized, pursuant to section 213.111.2, to award him attorney fees on appeal. The circuit court, however, "is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Berry v. Volkswagen Group of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. banc 2013). Mr. Wilson's motion for attorney fees on appeal is sustained. On remand, the circuit court should determine and award Mr. Wilson attorney fees and costs on appeal.

**Conclusion**

The award of litigation expenses is reversed. The circuit court's judgment is affirmed in all other respects, and the cause is remanded.

_____
PATRICIA BRECKENRIDGE, JUDGE


Wilson, Russell, Stith and Fischer, JJ.,
concur; Powell, J., concurs in part and
dissents in part in separate opinion filed;
Draper, C.J., concurs in opinion of Powell, J.



# SUPREME COURT OF MISSOURI
## en banc

J.L. WILSON,                           )
                                       )
        Respondent,             )
                                       )
v.                                     )      No.  SC97712
                                       )
CITY OF KANSAS CITY, MISSOURI,         )
                                       )
        Appellant.              )

**OPINION CONCURRING IN PART AND DISSENTING IN PART**

I concur with the principal opinion's analysis with respect to the issues presented in this appeal except its conclusion to reverse and remand the circuit court's award of litigation expenses.  Because I believe section 213.111.2[1] authorizes circuit courts to award litigation expenses as court costs, I respectfully dissent with respect to that part of the principal opinion and concur in all other parts of the Court's decision.

The Missouri Human Rights Act (MHRA) provides a means of privately enforcing Missouri's human rights law.  *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009).  In enacting the MHRA, the legislature recognized that government agencies can do only so much when it comes to protecting Missourians' right to be free from

---

[1] All statutory citations are to RSMo 2016 unless otherwise noted.

discrimination in the workplace. *Cf. id.* The legislature, accordingly, devised a system that allows individuals who have suffered discrimination in the workplace to privately pursue human right cases and facilitates private enforcement actions by providing for recovery of prevailing plaintiffs' attorney fees. *Id.* But to work properly, this system requires plaintiffs be able to recover the reasonable costs they expend during the course of the litigation in addition to attorney fees. A contrary result runs the risk of rendering human rights litigation prohibitively expensive and denying justice to those who cannot afford the collateral expenses associated with litigation. Wilson, accordingly, is correct that the MHRA authorizes an award and judgment of court costs and attorney fees to compensate "for all the costs of going to court." *Slip op.* at 10-11.

The plain and ordinary meaning of the term "court costs" as used in section 213.111.2 includes all costs and expenses of going to court and authorizes recovery of all reasonable sums a plaintiff must expend to vindicate his or her legal rights through the courts.[2] This Court should not adopt the principal opinion's narrow interpretation of the term "court costs," as litigating a human rights action requires a variety of reasonable expenditures, which both the plain and ordinary meaning of the language of section 213.111.2 and the MHRA's larger policy dictates should be recoverable and awarded to make plaintiffs who have suffered workplace discrimination whole.

---

[2] Although attorney fees are also a cost of going to court, they are properly classified apart from "court costs," as that term is used in the MHRA, because, as the principal opinion correctly observes, unless a statute or contractual agreement provides otherwise, parties typically bear the cost of their own attorney fees when litigating in the United States. *Slip op.* at 12 (citing *Incline Vill. Bd. of Trs. v. Edler*, 592 S.W.3d 334, 341 (Mo. banc 2019)).

2

As the principal opinion observes, "The MHRA 'recognizes the public purpose served by litigation that vindicates the rights of those who are discriminated against.'" *Id*. at 14 (quoting *Gilliland*, 273 S.W.3d at 523). For this reason, the MHRA's provision authorizing an award of court costs and attorney fees seeks to make MHRA plaintiffs whole "by compensating [those plaintiffs] for the costs of bringing suit." *Holmes v. Kan. City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 630 (Mo. App. 2012). The MHRA, however, can make a plaintiff whole only if an award of court costs pursuant to section 213.111.2 covers all the costs of going to court, including reasonable litigation expenses.

For these reasons, I believe section 213.111.2 authorized the circuit court to award litigation expenses as court costs. Because the circuit court was authorized to make its award of litigation expenses, it is unnecessary to remand this case for a determination as to whether the requested litigation expenses can be awarded as attorney fees. I would instead affirm the circuit court's judgment in all respects.

_____
W. Brent Powell, Judge

3